

# Sexual Misconduct Policy

2017-2018

# Sexual Misconduct Policy

**I.   Institutional Values and Community Expectations and Notice of Non-Discrimination** .................................................................................................**5**

   A. Campus Sexual Misconduct Bill of Rights ........................................................ 6
      *1. Complainant* ........................................................................................... 6
      *2. Respondent* ............................................................................................ 7
      *3. Both Parties* .......................................................................................... 7

**II.   Scope of Policy** ..................................................................................................**8**

   A. Persons Covered ............................................................................................... 8
   B. Locations Covered ............................................................................................ 8

**III.   Applicable Procedures Under This Policy** .........................................................**9**

   A. When the Respondent is a Student .................................................................... 9
   B. When the Respondent is a Faculty Member .................................................... 10
   C. When the Respondent is a Staff Member/Employee of the College .................... 10
   D. When the Respondent is Both a Student and Employee ................................... 10
   E. When the Respondent is a Third Party ............................................................ 10

**IV.   Prohibited Conduct and Definitions** ...............................................................**10**

   A. Sex or Gender-Based Discrimination .............................................................. 10
   B. Sexual or Gender-Based Harassment .............................................................. 11
   C. Sexual Misconduct ......................................................................................... 13
      *1. Sexual Assault* ..................................................................................... 14
      *2. Non-Consensual Sexual Contact* ......................................................... 14
      *3. Sexual Exploitation* ............................................................................. 14
      *4. Stalking* ............................................................................................... 15
   D. Intimate Partner Violence ............................................................................... 16
   E. Key Terms: Affirmative Consent, Force, Intimidation, Coercion, Incapacitation ......... 16
      *1. Affirmative Consent* ............................................................................. 16
      *2. Force* ................................................................................................... 17
      *3. Intimidation* ......................................................................................... 17
      *4. Coercion* .............................................................................................. 17
      *5. Incapacitation* ..................................................................................... 18
   F. Proscribed Relationships by Persons in Authority .......................................... 19
   G. Retaliation ..................................................................................................... 20

**V.   Confidentiality and Privacy** ...........................................................................**20**

   A. Privacy .......................................................................................................... 20
   B. Confidentiality ............................................................................................... 21

**VI.   Title IX Coordinator** ......................................................................................**21**

   A. Deputy Title IX Coordinator – Athletics ........................................................ 23

**VII.   Resources, Reporting, and Responsible Employees** .........................................**24**

   A. Confidential Resources ................................................................................... 25
   B. Confidential Medical Resources ...................................................................... 25

    C.  Additional Campus Resources ............................................................................ 26
    D.  Emergency Reporting Options .......................................................................... 26
    E.  Campus Reporting Options/Responsible Employees ....................................... 27
    F.  Anonymous Reporting ..................................................................................... 28
    G.  Reporting to External Agencies ....................................................................... 28
    H.  Other Reporting Considerations ....................................................................... 29
         1.  *Timeliness and Location of Incident* ...................................................... 29
         2.  *Amnesty for Alcohol or Other Drug Use for Students* ........................... 29
         3.  *False Reports* ....................................................................................... 29
         4.  *Take Back the Night and Other Public Awareness Events* ..................... 30

**VIII.**  **Timely Warning, Coordination with Law Enforcement, Initial Title IX Assessment,**
      **and Requests for Confidentiality** ....................................................................... **30**
    A.  Timely Warning .............................................................................................. 30
    B.  Coordination with Law Enforcement ............................................................... 30
    C.  Initial Title IX Assessment .............................................................................. 31
    D.  Interim Suspension - Students ......................................................................... 33
    E.  Request for Confidentiality .............................................................................. 33

**IX.**  **Interim Measures, Remedies, and Accommodations** .......................................... **34**
    A.  Range of Measures ......................................................................................... 34
    B.  No Contact Order ............................................................................................ 35

**X.**  **Training and Prevention Programming** ............................................................. **36**

**XI.**  **Appendix A: Resolution of a Complaint Against a Student** ................................. **38**
    A.  Informal Resolution ........................................................................................ 38
    B.  Sexual Misconduct Adjudication Process ........................................................ 39
         1.  *Initiating the Disciplinary Process* ....................................................... 39
           a.  Complainant Initiated Process ....................................................... 39
           b.  Timing of Complaints ................................................................... 40
           c.  Complaint Form ............................................................................ 40
           d.  Complainant's Statement ............................................................... 40
           e.  Limited Disclosure/Non-Retaliation Acknowledgment .................. 41
           f.  No Contact Order ........................................................................... 42
           g.  Administrative Complaints ............................................................ 42
         2.  *Responding To a Disciplinary Complaint* ............................................. 43
           a.  Initial Notification Meeting ........................................................... 43
           b.  Limited Disclosure/Non-Retaliation Acknowledgement ................. 43
           c.  Duty to Cooperate ......................................................................... 44
           d.  Complaint Form ............................................................................ 44
           e .  No Contact Order ........................................................................... 44
           f.  Options ........................................................................................... 45
              (1)  *Pre-Fact Finding Investigation Resolution of Complaint/Acceptance of Allegations* ...... 45
              (2)  *Respondent's Statement* ...................................................... 45
         3.  *Fact Finding Investigation* ................................................................... 46
           a.  Document Review ........................................................................... 47
           b.  Party Interviews ............................................................................. 47

       c.   Witness Interviews ............................................................................. 47

       d.   Expert Witnesses .............................................................................. 48

       e.   Admissibility of Evidence ................................................................ 48

           (1)  *Sexual History* ......................................................................... 48

           (2)  *Medical and Counseling Records* ............................................. 48

   4.   *Investigative Report* ............................................................................. 49

   5.   *Document Review* ................................................................................. 50

       a.   Options .............................................................................................. 50

           (1)  *Respondent May Accept Responsibility* ................................... 50

           (2)  *Respondent May Not Accept Responsibility* ............................ 51

           (3)  *Complainant May Withdraw Complaint* ................................... 51

   6.   *Notice of Charges* ................................................................................ 51

   7.   *Notice of Adjudication* ......................................................................... 51

   8.   *Panel Adjudication/Decision* .............................................................. 51

       a.   Advisors ............................................................................................ 53

       b.   Prior Sexual History ......................................................................... 54

       c.   Request to Reschedule Panel Meeting ............................................. 54

       d.   Consolidation of Adjudication Proceedings .................................... 54

       e.   Attendance at Adjudication Panel Meeting ..................................... 54

       f.   Participants in Adjudication Panel Procedures ............................... 55

       g.   Safeguarding of Privacy .................................................................. 55

       h.   Deliberation ..................................................................................... 55

   9.   *Sanctions* .............................................................................................. 56

   10. *Outcome Letter* .................................................................................... 58

   11. *Appeals* ................................................................................................ 58

   12. *Concerns about the Implementation of these Grievance Procedures* ............ 60

   13. *Integrity of Process* ............................................................................. 61

   14. *Conclusion of Case* ............................................................................. 61

**XII.**   **Appendix B: Resolution of a Complaint Against a Faculty Member** ........................ **63**

  A.  Advisors ....................................................................................................... 63

  B.  Faculty Hearing Board ................................................................................. 63

  C.  Informal Resolution ..................................................................................... 64

  D.  Formal Resolution ........................................................................................ 64

     1.   *Formal Complaint* ............................................................................... 64

     2.   *Limited Disclosure/ Non-Retaliation Acknowledgement-The Parties* ............ 65

     3.   *Responding To a Formal Complaint* ................................................... 65

     4.   *Respondent Statement* ......................................................................... 65

     5.   *Pre-Fact-Finding Resolution of Complaint/Acceptance* ..................... 66

     6.   *Administrative Determination* ............................................................ 66

     7.   *Investigative Report* ............................................................................ 67

     8.   *Information* ........................................................................................... 67

     9.   *Prior Sexual History* ........................................................................... 67

     10. *Medical and Counseling Records.* ....................................................... 67

  E.  Disciplinary Proceedings-Formal Hearing ................................................. 68

     1.   *Faculty Hearing Board Members* ....................................................... 69

        *2.*   *Prior to Formal Hearing* ......................................................................... 69

        *3.*   *Statements Relevant to Sanctioning* ....................................................... 70

        *4.*   *Faculty Hearing Board Procedures* .......................................................... 70

            a.   Call to Order .................................................................................... 71

            b.   Summary by Investigators ............................................................... 71

            c.   Brief Statement by Complainant ..................................................... 71

            d.   Brief Statement by Respondent ....................................................... 71

            e.   Witnesses ......................................................................................... 71

            f.   Questioning of Witnesses, Complainant, and Respondent ............. 72

            g.   Additional Questioning of Investigators ........................................ 72

            h.   Complainant and Respondent Address Outstanding Issues ........... 72

            i.   Deliberation .................................................................................... 72

            j.   Sanctions and Impact Statements ................................................... 73

            k.   Outcome .......................................................................................... 73

    F.  Appeals ............................................................................................................ 74

    G.  Concerns about the Implementation of these Grievance Procedures ............. 75

    H.  Integrity of Proceedings ................................................................................. 76

    I.  Records ............................................................................................................ 76

**XIII.**  **Appendix C: Resolution of a Complaint Against an Employee....................78**

    A.  Informal Resolution ........................................................................................ 78

    B.  Formal Resolution .......................................................................................... 79

        *1.*   *Filing a Complaint* .................................................................................. 79

            a.   Complaint Form and Complainant's Statement ............................. 79

            b.   Limited Disclosure/Non-Retaliation Acknowledgment .................. 81

        *2.*   *Administrative Complaint* ...................................................................... 81

        *3.*   *Responding To a Complaint* ................................................................... 81

            a.   Initial Meeting/Limited Disclosure/Non-Retaliation Acknowledgment ... 81

            b.   Pre-Fact-Finding Resolution of Complaint/Acceptance ............... 82

            c.   Respondent's Statement .................................................................. 82

    C.  Fact Finding Investigation .............................................................................. 83

    D.  Resolution of Formal Complaint .................................................................... 84

    E.  Outcome Letter ............................................................................................... 85

    F.  Appeals ............................................................................................................ 85

    G.  Concerns about the Implementation of these Grievance Procedures ............. 87

    H.  Integrity of Proceedings ................................................................................. 87

    I.  Records ............................................................................................................ 87

## I.        Institutional Values and Community Expectations and Notice of Non-Discrimination

Union College is an educational community where strong emphasis is placed on self-discovery and awareness. Where such an atmosphere exists for freedom of expression, however, it must always be combined with a mutual respect and consideration for the lives and feelings of others. In such a setting, there is no place for conduct that diminishes, uses, or abuses other individuals. Any violation of trust, any form of sexual intimidation, exploitation, or discrimination jeopardizes the mission of the institution and threatens the educational experience and well-being of students, staff, or faculty. Union College will not tolerate sexual misconduct, and the institution will take appropriate action, as deemed necessary, to prevent and address such conduct.

It is the policy of Union College to maintain an environment for students, faculty, administrators, staff, and visitors that is free of all forms of discrimination and harassment, including sexual misconduct. The College has enacted this Sexual Misconduct Policy (the "Policy") to reflect and maintain its institutional values and community expectations, to provide for fair and equitable procedures for determining when this Policy has been violated, and to provide recourse for individuals and the community in response to violations of this Policy.

This Policy prohibits all forms of sexual or gender-based discrimination, harassment, and misconduct, including sexual assault, non-consensual sexual contact, intimate partner violence, sexual exploitation, and stalking. This Policy also prohibits retaliation against a person who reports, complains about, or who otherwise participates in good faith in, any matter related to this Policy. All of the foregoing conduct shall be referred to as "Prohibited Conduct."

Union does not discriminate on the basis of sex in its educational, extracurricular, athletic, or other programs or in the context of employment. Sex discrimination is prohibited by Title IX of the Education Amendments of 1972, a federal law that provides:

> *No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.*

Sexual harassment is also prohibited under Title IX, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and other applicable statutes. This Policy prohibits sexual harassment against Union community members of any sex, sexual orientation, gender identity, or gender expression in the context of education or employment. This Policy also prohibits gender-based harassment that does not involve conduct of a sexual nature.

A healthy and productive educational community is one in which students, faculty, and staff all treat each other with mutual respect. Nothing in this policy statement should be taken to supersede the College's commitment to the free and vigorous discussion of ideas and issues, which this policy preserves. Union College is committed to protecting the academic freedom and freedom of expression of all members of the College community. This policy shall be applied in a manner that protects the academic freedom and freedom of expression of all parties to a complaint. Academic freedom and freedom of expression include, but are not limited to, expression of ideas, however

controversial, in the classroom, residence hall, and in work places everywhere in the College community.

The College strongly encourages all members of our community to take action to maintain and facilitate a safe, welcoming, and respectful environment on campus. In particular, the College expects that all Union community members will take reasonable and prudent actions to prevent or stop Prohibited Conduct. The College strongly supports individuals who choose to take such action and will protect such individuals from retaliation.

Upon receipt of a report, the College will take prompt and equitable action to eliminate the Prohibited Conduct (if any), prevent its recurrence, and remedy its effects. In addition, the College will fulfill its obligations under the Violence Against Women Reauthorization Act of 2013 ("VAWA") amendments to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act") in response to reported Prohibited Conduct. The College's processes for investigating and responding to reported Prohibited Conduct are contained in the following appendices: Appendix A: Resolution of a Complaint Against a Student; Appendix B: Resolution of a Complaint Against a Faculty Member; and Appendix C: Resolution of a Complaint Against an Employee. Students or employees who are found to have violated this Policy may face disciplinary action up to and including expulsion (students) or termination of employment (faculty or staff).

Union also prohibits other forms of discrimination and harassment, including discrimination and harassment on the basis of race, color, national origin, ancestry, age, religious belief, marital status, physical or mental disability, medical condition, veteran status, or any other characteristic protected by federal, state, or local law. Such prohibited conduct is addressed in other College policies prohibiting discrimination, harassment and retaliation based on protected status. Sexual harassment is a form of sex discrimination and is covered under this Policy. Sex discrimination that is not sexual harassment, including allegations of disparate treatment, is addressed in other College policies.

The College provides a number of rights to complainants in accusations of misconduct and to those accused of sexual misconduct including, but not limited to, the following:

### A. *Campus Sexual Misconduct Bill of Rights*

#### 1. *Complainant*

If you file a report of sexual misconduct (the complainant), you have the right to:

- Make a report to a College official with knowledge about the College Sexual Misconduct Policy, reporting options, and resources.

- Obtain assistance from College officials to make a report to local law enforcement and/or state police.

- Information about on and off campus resources including intervention, mental health counseling, and medical services, which shall include information on whether such resources are available at no cost or for a fee.

- Information about sexually transmitted infections, sexual assault forensic examinations, and resources available through the New York State Office of Victim Services (found at https://ovs.ny.gov/ )

- Information about the range of interim accommodations and remedies.

- Have disclosures of sexual misconduct, relationship violence, sexual harassment, or stalking treated seriously.

- Make a decision about whether or not to disclose a crime or violation and participate in the judicial or conduct process and/or criminal justice process free from pressure by the College.

- Be treated with dignity and to receive from the College courteous, fair, and respectful health care and counseling services, where available.

- Be free from any suggestion that you are at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations.

- Describe the incident to as few College representatives as practicable and not be required to unnecessarily repeat a description of the incident.

- Be protected from retaliation by the College, any student, staff, or faculty member, the respondent, and/or his/her friends, family, and acquaintances within the jurisdiction of the College.

*2. Respondent*

As a party accused of sexual misconduct (the respondent), you are entitled to:

- Be treated with dignity and respect by College officials.

- Be afforded the right to a presumption of not responsible until a finding of responsibility is made in accordance with the procedures defined in this policy.

- Receive from the College campus support resources (Counseling Services, the Office of Religious and Spiritual Life, Human Resources, and Health Services).

*3. Both Parties*

The complainant and respondent have the following rights:

- To be able to exercise their civil rights and practice religion without interference by the investigative, criminal justice, or judicial or conduct process of the College.

- Participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard.

- To request a campus "no contact order" against the other party.

- To have an advisor of their choice (including legal counsel who they have retained) to assist in, and/or offer advice on, reporting and filing a complaint (if the

complainant) and responding to a complaint (if the respondent); and to be present throughout the investigative process (while meeting with investigators), during informal resolution discussions with the Title IX Team, and/or throughout critical stages of the Formal Complaint Resolution process, as requested.

- To have the rights set forth under the Formal Resolution Procedures.

- Access to at least one level of appeal of a determination.

## II.   Scope of Policy

This Policy applies to all reports of Prohibited Conduct occurring on or after the effective date of this Policy. Where the date of the reported Prohibited Conduct precedes the effective date of this Policy, the definitions of misconduct in existence at the time of the report will be used. The Grievance Process under this Policy, however, will be used to investigate and resolve all reports made on or after the effective date of this Policy, regardless of when the incident(s) occurred.

When used in this Policy, "Complainant" refers to the individual who is identified as the subject of Prohibited Conduct. "Respondent" refers to the individual alleged to have engaged in Prohibited Conduct. A "Third-Party" refers to any other participant in the process, including a witness or an individual who makes a report on behalf of a Complainant.

### A.  Persons Covered

This Policy applies to all Union community members, including students, faculty, administrators, staff, volunteers, vendors, contractors, visitors, and individuals regularly or temporarily employed, conducting business, studying, living, visiting, or having any official capacity with the College or on its property.

The College strongly encourages reports of Prohibited Conduct regardless of who engaged in the conduct. Even if the College does not have jurisdiction over the Respondent, the College will take prompt action to provide for the safety and well-being of the Complainant and the broader campus community.

### B.  Locations Covered

This policy applies to conduct that occurs on any part of Union's campus or property. It also applies when students, staff, or faculty travel off-campus as part of a College activity, team, organization, event, or College sponsored study abroad programs.

For students, Union College has the discretion to discipline behavior that occurs off-campus, in the City, and/or during a time when the College is not in session. In making these determinations, the Dean of Students considers whether the behavior impacts the campus environment (as would be the case, for example, if one student sexually assaults another student in an off-campus apartment or overseas during a term abroad, or if a student sends another student lewd and threatening sexual emails while at home during the term break). In understanding this aspect of Union's expectations for student behavior,

it may be helpful to think of student status as "portable" and therefore operative even when students are not on Union's campus or property.

For staff and faculty, Union College has the discretion to discipline behavior that occurs off campus. In making these determinations, the appropriate administrator or Title IX Team member considers whether the alleged action took place during a Union College sponsored event or activity or uses College property in a way to commit the alleged action. Additionally, any action taking place off site, for example, but limited to an email or communication from a home computer or behavior that affects the employment relationship may be considered a violation of this policy.

A complainant is encouraged to report misconduct regardless of where the incident occurred or who committed it. Even if the College does not have jurisdiction over the respondent, the College will still take prompt action to provide for the safety and well-being of the complainant and the broader community.

## III.   Applicable Procedures Under This Policy

The specific procedures for reporting, investigating, and resolving prohibited conduct are based upon the nature of the Respondent's relationship to the College (Student, Staff, Faculty member or Third Party). Each set of procedures referenced below is guided by the same principles of fairness and respect for Complainants and Respondents.

A Student, Staff or Faculty member determined by the College to have committed an act of prohibited conduct is subject to disciplinary action, up to and including separation from the College. Third Parties who commit prohibited conduct may have their relationships with the College terminated and/or their privileges of being on College premises withdrawn in accordance with the Rules of Public Order. Additionally, Union College will cooperate and participate with outside law enforcement as needed.

The procedures referenced below provide for prompt and equitable response to reports of misconduct. The procedures designate specific timeframes for major stages of the process and provide for thorough and impartial investigations that afford all parties notice and an opportunity to present witnesses and evidence and to view the information that will be used in determining whether a policy violation has occurred. The College applies the Preponderance of the Evidence standard when determining whether this policy has been violated. "Preponderance of the Evidence" means that it is more likely than not that a policy violation occurred.

### A.   When the Respondent is a Student

The procedures for responding to reports of misconduct committed by Students are detailed in section XI. Appendix A: Resolution of a Complaint Against a Student.

### B. When the Respondent is a Faculty Member

The procedures for responding to reports of misconduct committed by a Faculty Member are detailed in section XII. Appendix B: Resolution of a Complaint Against a Faculty Member.

### C. When the Respondent is a Staff Member/Employee of the College

The procedures for responding to reports of misconduct committed by staff or employees are detailed in section XIII. Appendix C: Resolution of a Complaint Against an Employee.

### D. When the Respondent is Both a Student and Employee

1. The Student-Respondent procedures (Appendix A) will apply if the Respondent is a full-time Student but not a full-time Employee;
2. The Employee-Respondent procedures (Appendix C) will apply if the Respondent is a full-time Employee but not a full-time Student; or
3. If there is a question as to the predominant role of the Respondent, the College's Title IX Coordinator will determine which of the procedures applies based on the facts and circumstances (such as which role predominates in the context of the Prohibited Conduct). Further, where a Respondent is both a Student and an Employee, the Respondent may be subject to any of the sanctions applicable to Students or Employees.

### E. When the Respondent is a Third Party

The College's ability to take appropriate corrective action against a Third Party will be determined by the nature of the relationship of the Third Party to the College. The Title IX Coordinator, in consultation with a senior administrator, will determine the appropriate manner of resolution consistent with the College's commitment to a prompt and equitable process consistent with federal law, federal guidance, state law, the Rules of Public Order, and this policy.

## IV.   Prohibited Conduct and Definitions

### A. Sex or Gender-Based Discrimination

Sex or gender-based discrimination refers to the disparate treatment of a person or group because of that person's or group's sex, sexual orientation, gender identity or gender expression. Sexual harassment is a form of sex discrimination and is covered under this Policy. Sex discrimination that is not sexual harassment, including allegations of disparate treatment, is addressed in other College policies.

### B. *Sexual or Gender-Based Harassment*

"Harassment" is conduct that creates an intimidating, offensive, or hostile working or learning environment or that unreasonably interferes with work or academic performance based on a person's protected status, including sex, sexual orientation, gender identity, or gender expression. All such conduct is unlawful.

"Sexual Harassment" is any unwelcome sexual advance, request for sexual favors, or other unwelcome conduct of a sexual nature, whether verbal, physical, graphic, or otherwise.

"Gender-Based Harassment" is harassment based on sex, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal, physical, graphic, or otherwise. To qualify as Gender-Based Harassment, the conduct need not involve conduct of a sexual nature.

Generally speaking, harassment can be divided into two types of conduct:

1. **Quid Pro Quo Harassment**. Submission to or rejection of such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment, academic standing, or participation in any aspect of a College program or activity or is used as the basis for the College's decisions affecting the individual.

2. **Hostile Environment**. A hostile environment exists when the conduct is sufficiently severe, pervasive, or persistent that it unreasonably interferes with, limits, or deprives an individual from participating in or benefiting from the College's education or employment programs and/or activities. Whether conduct is sufficiently severe, pervasive, or persistent is determined by using an objective standard of a reasonable person as well as the subjective standard of the Complainant.

Harassing conduct can take many forms. The determination of whether an environment is hostile is based on the totality of the circumstances, including but not limited to: (1) the frequency of the conduct; (2) the nature and severity of the conduct; (3) whether the conduct was physically threatening; (4) the effect of the conduct on the Complainant's mental or emotional state, with consideration of whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or College programs or activities; (5) whether the conduct was directed at more than one person; (6) whether the conduct arose in the context of other discriminatory conduct; and (7) whether the conduct in question is legally protected by academic freedom in accordance with the Academic Freedom Policy statement contained in the Faculty Manual (FM V.II), which is adapted from the AAUP "1940 Statement of Principles on Academic Freedom and Tenure." If the conduct is believed to be protected speech, it is incapable of legally creating a hostile environment in and of itself. To the extent allowed by applicable law, a determination of whether speech serves a pedagogical purpose is initially guided by the faculty speaker and his/her faculty peers (defined as senior members of the FEC), in

11

accordance with grievance procedures to resolve a formal complaint of harassment which goes to hearing (see Appendix B).

A single isolated incident may create a hostile environment if the incident is sufficiently severe, particularly if the conduct is physical. A single incident of Sexual Assault, for example, may be sufficiently severe to constitute a hostile environment. In contrast, the perceived offensiveness of a single verbal or written expression is typically not sufficient to constitute a hostile environment. In determining whether speech constitutes harassment prohibited by this policy, the academic freedom of the faculty engaged in pedagogy will be taken into account.

Sexual or Gender-Based Harassment:

- May be blatant and intentional and involve an overt action, a threat or reprisal, or may be subtle and indirect, with a coercive aspect that is unstated.

- May be committed by anyone, regardless of gender, age, position or authority. While there is often a power differential between two persons, perhaps due to differences in age, social, educational or employment relationships, harassment can occur in any context.

- May be committed by a stranger, an acquaintance, or someone with whom the Complainant has an intimate or sexual relationship.

- May be committed by or against an individual or may be a result of the actions of an organization or group.

- May occur by or against an individual of any sex, sexual orientation, gender identity, or gender expression.

- May occur in the classroom, in the workplace, in residential settings, or in any other setting.

- May be a one-time event or can be part of a pattern of behavior.

- May be committed in the presence of others or when the Parties are alone.

- May affect the Complainant and/or third Parties who witness or observe harassment and are affected by it.

Examples of conduct that may constitute Sexual Harassment as defined above may include a severe, persistent or pervasive pattern of unwelcome conduct that includes one or more of the following:

- **Physical conduct**, including unwelcome touching, sexual/physical assault, impeding, restraining, or blocking movements, or unwanted sexual advances;

- **Verbal conduct**, including making or using derogatory comments, epithets, slurs or humor; verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, suggestive or obscene letters, notes, or invitations; or objectively offensive comments of a sexual nature, including persistent or pervasive sexually explicit statements, questions, jokes, or anecdotes;

- **Visual conduct**, including leering, making sexual gestures, displaying of suggestive objects or pictures, cartoons, or posters in a public space or forum; or severe, persistent, or pervasive visual displays of suggestive, erotic, or degrading sexually oriented images that are not pedagogically appropriate;

- **Written conduct**, including letters, notes or electronic communications containing comments, words, or images described above;

- **Quid pro quo conduct**, including direct propositions of a sexual nature between those for whom a power imbalance or supervisory or other authority relationship exists; offering educational or employment benefits in exchange for sexual favors; making submission to sexual advances an actual or implied condition of employment, work status, promotion, grades, or letters of recommendation, including subtle pressure for sexual activity, an element of which may be repeated requests for private meetings with no academic or work purpose; or making or threatening reprisals after a negative response to sexual advances.

### C. *Sexual Misconduct*

The College prohibits the following specific conduct: (1) *Sexual Assault*; (2) *Non-Consensual Sexual Contact*; (3) *Sexual Exploitation*; and (4) *Stalking*.

Each of these is explained in detail below. The College recognizes that other Prohibited Conduct, including (but not limited to) Intimate Partner Violence and Retaliation, may refer to behavior which constitutes Sexual Misconduct. In instances where Prohibited Conduct constitutes a violation of more than one violation of the Policy, an individual may allege either or all violations of the Policy.

*1.  Sexual Assault*

Sexual Assault is having or attempting to have sexual intercourse with another individual:

- By force or threat of force;

- Without effective affirmative consent; or

- When that individual is incapacitated.

Sexual assault refers to any sexual penetration (anal, oral, or vaginal), however slight, with any object, or sexual intercourse by a man or woman upon a man or woman without consent. Sexual penetration includes vaginal or anal penetration by a penis, tongue, finger, or object or oral copulation by mouth to genital contact or genital to mouth contact.

*2.  Non-Consensual Sexual Contact*

Non-Consensual Sexual Contact is having sexual contact with another individual:

- By force or threat of force;

- Without effective affirmative consent; or

- When that individual is incapacitated.

Non-Consensual Sexual Contact includes intentional contact with the intimate parts of another, causing an individual to touch their own intimate body parts, or disrobing or exposure of another without permission. Intimate body parts may include the breasts, genitals, buttocks, groin, mouth or any other part of the body that is touched in a sexual manner.

*3.  Sexual Exploitation*

Sexual Exploitation occurs when an individual takes non-consensual or abusive sexual advantage of another for one's own advantage or benefit, or to benefit or advantage anyone other than the one being exploited. Examples of Sexual Exploitation include, but are not limited to:

- surreptitiously observing another individual's nudity or sexual activity or allowing another to observe consensual sexual activity without the knowledge and consent of all Parties involved;

- non-consensual sharing or streaming of images, photography, video, or audio recording of sexual activity or nudity of the person being exploited, or distribution of such without the knowledge and consent of all Parties involved;

- Prostitution (such as selling or exchanging sexual acts for money or something else of value or benefit).

- exposing one's genitals or inducing another to expose their own genitals in non- consensual circumstances;

- knowingly exposing another individual to a sexually transmitted disease or virus without their knowledge; and

- inducing incapacitation for the purpose of making another person vulnerable to non-consensual sexual activity.

*4. Stalking*

Stalking occurs when a person engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for their safety or the safety of others or suffer substantial emotional distress.

*A course of conduct* consists of two or more acts, including, but not limited to, acts in which a person directly, indirectly, or through third Parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property.

*Reasonable person* means a reasonable person under similar circumstances and with similar identities to the Complainant.

*Substantial emotional distress* means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

Cyber-stalking is a particular form of stalking in which electronic media such as the internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact are used.

Examples of Stalking include, but are not limited to:

- Non-consensual communication including in-person communication, telephone calls, voice messages, text messages, email messages, social networking site postings, instant messages, postings of pictures or information on web sites, written letters, gifts, or any other communications that are undesired and/or place another person in fear;

- Following, pursuing, waiting, or showing up uninvited at a workplace, place of residence, classroom, or other locations frequented by a person;

- Surveillance and other types of observation, whether by physical proximity or electronic means; and

- Gathering of information about a person from family, friends, co-workers, and/or classmates.

To qualify as stalking, the conduct is not required to be sexual in nature.

### D.  *Intimate Partner Violence*

Intimate Partner Violence includes any act of violence or threatened act of violence against a person who is, or has been involved in, a sexual, dating, spousal, domestic, or other intimate relationship with the Respondent. The College will not tolerate Intimate Partner Violence of any form.

Intimate Partner Violence is often referred to as dating violence, domestic violence, or relationship violence. Intimate Partner Violence can encompass a broad range of behavior including, but not limited to, physical violence, sexual violence, psychological and/or emotional violence, and economic abuse. It may involve one act or an ongoing pattern of behavior. Intimate Partner Violence may take the form of threats, assault, property damage, violence or threat of violence to one's self, one's sexual or romantic partner, or to the family members or friends of the sexual or romantic partner. Intimate Partner Violence affects individuals of all sexes, sexual orientations, gender identities, and gender expressions, races and social and economic backgrounds.

*Dating Violence* is causing or attempting to cause physical or sexual assault or abuse, placing another in reasonable fear of serious bodily injury, restraining another's liberty or freedom of movement, or stalking where such conduct is directed against the complainant by someone with whom he/she is or has been in a romantic or intimate relationship. Whether there was such a relationship will be gauged by its length, type, and frequency of interaction.

*Domestic Violence* is causing or attempting to cause physical or sexual assault or abuse, placing another in reasonable fear of serious bodily injury, restraining another's liberty or freedom of movement, or stalking, where such conduct is directed against the complainant by his/her current or former spouse or intimate partner or any other person from whom the complainant is protected under federal or state law.

### E.  *Key Terms: Affirmative Consent, Force, Intimidation, Coercion, Incapacitation*

#### 1.  *Affirmative Consent*

Under New York law, affirmative consent means: knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. The definition of consent does not vary based upon a participant's sex, sexual orientation, gender identity, or gender expression.

- Consent to any sexual act or prior consensual sexual activity between or with any party does not necessarily constitute consent to any other sexual act.

- Consent is required regardless of whether the person initiating the act is under the influence of drugs and/or alcohol.

- Consent may be initially given but withdrawn at any time.

- Consent cannot be given when a person is incapacitated, which occurs when an individual lacks the ability to knowingly choose to participate in sexual activity. Incapacitation may be caused by the lack of consciousness or being asleep, being involuntarily restrained, or if an individual otherwise cannot consent. Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent.

- Consent cannot be given when it is the result of any coercion, intimidation, force, or threat of harm.

- When consent is withdrawn or can no longer be given, sexual activity must stop.

*2.   Force*

Force is the use or threat of physical violence to overcome an individual's freedom of will to choose whether or not to participate in sexual activity or provide consent. Consent obtained by force is not valid.

For the use of force to be demonstrated, there is no requirement that a Complainant resist the sexual advance or request. However, evidence of resistance by the Complainant will be viewed as a clear demonstration of a lack of consent.

*3.   Intimidation*

Intimidation is the use of implied threats to overcome an individual's freedom of will to choose whether or not to participate in sexual activity or provide consent. Consent obtained by intimidation is not valid.

*4.   Coercion*

Coercion is the improper use of pressure to compel another individual to initiate or continue sexual activity against that individual's will. Consent obtained through coercion is not valid.

Coercion can include a wide range of behaviors, including intimidation, manipulation, threats, and blackmail. A person's words or conduct are sufficient to constitute coercion if they wrongfully impair another individual's freedom of will and ability to choose whether or not to engage in sexual activity. Examples of coercion include threatening to "out" someone based on sexual orientation, gender identity, or gender expression and threatening to harm oneself if the other Party does not engage in the sexual activity. When someone indicates, verbally or physically, that they do not want to engage in a particular sexual activity, that they want to stop a particular activity, or that they do not want to go past a certain point of sexual interaction, continued activity or pressure to continue beyond that point can be coercive. The College will evaluate the following in determining whether coercion was used: (a) the frequency of the application of

pressure, (b) the intensity of the pressure, (c) the degree of isolation of the person being pressured, and (4) the duration of the pressure.

*5. Incapacitation*

Incapacitation is a state where an individual cannot make an informed and rational decision to engage in sexual activity because of a lack of conscious understanding of the fact, nature, or extent of the act (e.g., to understand the who, what, when, where, why, or how of the sexual interaction) and/or is physically helpless. For example, an individual is incapacitated, and therefore unable to give consent, if the individual is asleep, unconscious, or otherwise unaware that sexual activity is occurring. An individual will also be considered incapacitated if the person cannot understand the nature of the activity or communicate due to a mental or physical condition.

Incapacitation may result from the use of alcohol, drugs, or other medication. Consumption of alcohol or other drugs alone is insufficient to establish incapacitation.

The impact of alcohol and drugs varies from person to person, and evaluating incapacitation requires an assessment of how the consumption of alcohol and/or drugs impacts an individual's: (1) decision-making ability; (2) awareness of consequences; (3) ability to make informed judgments; or (4) capacity to appreciate the nature and the quality of the act.

It shall not be a valid excuse that the Respondent believed that the Complainant affirmatively consented to the sexual activity if the Respondent knew or reasonably should have known that the Complainant was unable to consent to the sexual activity under any of the following circumstances: (a) the Complainant was asleep or unconscious; (b) the Complainant was incapacitated due to the influence of drugs, alcohol, or medication, so that the Complainant could not understand the fact, nature, or extent of the sexual activity; (c) the Complainant was unable to communicate due to a mental or physical condition.

Whether the Respondent reasonably should have known that the Complainant was incapacitated will be evaluated using an objective reasonable person standard. The fact that the Respondent was actually unaware of the Complainant's incapacity is irrelevant to this analysis, particularly where the Respondent's failure to appreciate the Complainant's incapacitation resulted from the Respondent's failure to take reasonable steps to determine the Complainant's incapacitation or where the Respondent's own incapacitation (from alcohol or drugs) caused the Respondent to misjudge the Complainant's incapacity.

It is the responsibility of each Party to be aware of the intoxication level of the other Party before engaging in sexual activity. In general, sexual activity while under the influence of alcohol or other drugs poses a risk to all Parties. If there is any doubt as to the level or extent of the other individual's intoxication, it is safest to forgo or cease any sexual contact or activity.

Being intoxicated by drugs or alcohol is no defense to any violation of this Policy and does not diminish one's responsibility to obtain consent.

### F. Proscribed Relationships by Persons in Authority

Sexual or other intimate relationships in which one Party maintains — and fails to promptly report and discontinue — a direct supervisory or evaluative role over the other Party are prohibited. In general, this includes all sexual or other intimate relationships between students and their employers, supervisors, professors, coaches, advisors, or other College employees. Similarly, College employees (faculty and staff) who supervise or otherwise hold positions of authority over others are prohibited from having a sexual or other intimate relationship with an individual under the employee's direct supervision.

The College does not wish to interfere with private choices regarding personal relationships when these relationships do not interfere with the goals and policies of the College. However, faculty, administrators, and others who educate, supervise, evaluate, employ, counsel, coach, or otherwise guide students should understand the fundamentally asymmetrical nature of the relationship they have with students, employees (as applicable), or subordinates. Intimate or sexual relationships where there is a differential in power or authority produce risks for every member of our community and undermine the professionalism of faculty and supervisors. In either context, the unequal position of the Parties presents an inherent element of risk and may raise sexual harassment concerns if one person in the relationship has the actual or apparent authority to supervise, evaluate, counsel, coach, or otherwise make decisions or recommendations as to the other person in connection with their employment or education at the College.

Sexual relations between persons occupying asymmetrical positions of power, even when both consent, raise suspicions that the person in authority has violated standards of professional conduct and potentially subject the person in authority to charges of sexual harassment based on changes in the perspective of the individuals as to the consensual nature of the relationship. Similarly, these relationships may impact third Parties based on perceived or actual favoritism or special treatment based on the relationship.

The College has adopted a policy that balances, on the one hand, its wish not to interfere with the private choices of its community members and, on the other hand, concerns regarding relationships in which one Party maintains a direct supervisory or evaluative role over the other Party. Specifically, if an individual contemplates beginning, or is involved in, a sexual or other intimate relationship with another, over whom the individual holds direct supervisory or evaluative responsibilities, the individual must promptly: (1) discontinue any supervising role or relationship over the other person; and (2) report the circumstances to their own supervisor or the VP of Academic Affairs (Faculty) and Human Resources. Failure to fully or timely comply with these requirements is a violation of this Policy, and the person in authority could be subject to disciplinary action, up to and including dismissal from employment by the College.

Any individual may file a complaint alleging harassment or discrimination, including third Parties outside the relationship directly affected by the perceived harassment or discrimination.

### G. Retaliation

Retaliation includes adverse action taken against a person for making a good faith report of Prohibited Conduct or participating in any proceeding under this Policy. Adverse action includes conduct that threatens, intimidates, harasses, coerces or in any other way seeks to discourage a reasonable person from engaging in activity protected under this Policy. Retaliation can be committed by or against any individual or group of individuals, not just a Respondent or Complainant. Retaliation does not include good faith actions lawfully pursued in response to a report of Prohibited Conduct. Retaliation may be present even where there is a finding of "no responsibility" on the allegations of Prohibited Conduct.

The College will take immediate and responsive action to any report of retaliation and will pursue disciplinary action as appropriate. An individual reporting Prohibited Conduct is entitled to protection from any form of retaliation following a report that is made in good faith, even if the report is later not proven.

Any employee may pursue any charge of discrimination or harassment with the New York State Equal Employment Opportunity Commission or the federal Equal Opportunity Employment Commission ("EEOC"). It is unlawful to retaliate against any employee for opposing the practices prohibited by New York State Human Rights Law or comparable federal law or for filing a complaint with, or for otherwise participating in, an investigation, proceeding, or hearing conducted EEOC.

## V.   Confidentiality and Privacy

The College is committed to protecting the privacy of all individuals involved in the investigation and resolution of reports under this Policy. The College also is committed to assisting students, employees, and third Parties in making informed choices. With respect to any report under this Policy, the College will make reasonable efforts to protect the privacy of participants, in accordance with Article 129-B of the New York State Education Law, FERPA, and other applicable federal laws, while balancing the need to gather information to take steps to eliminate prohibited conduct, prevent its recurrence, and remedy its effects. All College employees who are involved in the College's Title IX response receive specific instruction about respecting and safeguarding private information.

Privacy and confidentiality have distinct meanings under this Policy.

### A. Privacy

Privacy generally means that information related to a report of misconduct will only be shared with a limited circle of individuals. The use of this information is limited to those College employees who "need to know" in order to assist in the active review,

investigation, or resolution of the report. While not bound by confidentiality, these individuals will be discreet and respect the privacy of all individuals involved in the process and for student parties subject to FERPA.

### B. *Confidentiality*

Confidentiality means that information shared by an individual with designated campus or community professionals cannot be revealed to any other individual without the express permission of the individual. These campus and community professionals include mental health providers, ordained clergy, and rape crisis counselors, all of whom have legally protected confidentiality. These individuals are prohibited from breaking confidentiality unless there is an imminent threat of harm to self or others

An individual who seeks completely confidential assistance may do so by speaking with professionals who have a legally protected confidentiality. On campus, confidential resources available to students include psychological counselors at the Counseling Center, licensed health care professionals in Wicker Wellness Center, and the Campus Minister in the Office for Religious & Spiritual Life. For staff and faculty, the EAP (Employee Assistance Program) offers confidential on or off campus support by calling: 1-800-828-6025. When a report involves suspected abuse of a minor under the age of 18, these confidential resources are required by state law to notify child protective services and/or local law enforcement.

An individual may also seek assistance from a medical provider. In general, the disclosure of private information contained in medical records is protected by New York State patient confidentiality laws.

## VI.   Title IX Coordinator

The College has a designated Title IX Coordinator. The Title IX Coordinator monitors the College's overall compliance with Title IX, ensures appropriate training and education, and oversees the College's investigation, response, and resolution of reports made under this Policy. Upon receiving reports of Prohibited Conduct, the Title IX Coordinator ensures that appropriate action is taken to eliminate that conduct, prevent its recurrence, and remedy its effects. The Title IX Coordinator is available to advise all individuals—including individuals who have experienced misconduct, individuals who are alleged to be responsible for misconduct, and third-parties — on this Policy and the appended Grievance Processes.

One should contact the Title IX Coordinator in order to:

- seek information or training about student, staff, and faculty rights and courses of action available to resolve reports or complaints that involve potential sex discrimination, including sexual misconduct,

- file a complaint or make a report of sex discrimination, including sexual misconduct,

- notify the College of an incident or policy or procedure that may raise potential Title IX concerns,

- get information about available resources (including confidential resources) and support services relating to sex discrimination, including sexual misconduct, and

- ask questions about the College's policies and procedures related to sex discrimination, including sexual misconduct.

The Title IX Coordinator's functions and responsibilities include:

- training for students, faculty, and employees of the College,

- assessing whether a report or complaint alleges conduct that may (more likely than not), upon investigation, constitute behavior that could be considered prohibited sexual misconduct,

- appointing an investigative team upon such determination,

- making certain that individual reports and complaints are handled properly and in a prompt and timely manner,

- informing all parties regarding the grievance process,

- confirming that all parties have been notified of grievance decisions and of the right to, and procedures for, appeal,

- maintaining information and documentation related to the investigation in a secure manner,

- monitoring compliance with timeframes specified in the grievance procedures,

- promptly taking steps to ensure interim or remedial measures are utilized as needed or requested,

- coordinating an annual climate survey, in consultation with research personnel with expertise in survey design and data collection and analysis,

- analyzing data collected by the annual climate survey to assess the rates and nature of sexual misconduct, any location hot-spots or risk factors, knowledge of the College's sexual misconduct policies, procedures and resources, and the consequences of violating such policies, and the effectiveness of the College's efforts to strive to ensure that the College is free from sexual misconduct,

- reviewing all reports and complaints raising potential Title IX issues throughout the College to ensure that the College responded consistent with its Title IX obligations, even if the report or complaint was initially filed or raised with another individual,

- reviewing all reports and complaints raising potential Title IX issues throughout the college to identify and address any patterns,

22

- reviewing the College's policies and procedures to strive to ensure that they comply with the requirements of Title IX,

- organizing and maintaining files related to grievances, reports, complaints, and other records of potential sex discrimination, including sexual misconduct, in a secure manner,

- assessing regularly the College's compliance with, and the effectiveness of, policies and procedures related to sex harassment, sexual misconduct, and recommending modifications where appropriate,

- coordinating regularly with Campus Safety with respect to overlapping obligations related to sexual misconduct against students, including prevention, education, and training,

- consulting regularly with the College President and/or his/her designee and campus stakeholders to promote campus-wide awareness and discussion of Title IX-related issues, and develop and implement any modifications of policies and procedures to prevent and eliminate sex discrimination, including sexual misconduct, and

- ensuring that appropriate policies and procedures are in place for working with local law enforcement and coordinating with local victim advocacy organizations and service providers, including rape crisis centers.

In addition, based on the relationship of the Complainant and/or the Respondent to the College, the Title IX Coordinator may be supported by the Associate Dean of Students, the Director of Campus Safety, the Dean of Faculty, and/or a representative from Human Resources. Collectively, the Title IX Coordinator and the individuals supporting the Coordinator are the "Title IX Team." The Title IX Team is a small circle of individuals who have a "need to know" of any alleged Prohibited Conduct to effectuate this Policy. The following individual has been designated by Union College to serve at the Title IX Coordinator:

**Melissa Kelley, Title IX Coordinator**
**403E Reamer Campus Center**
**518-388-6865**
**Kelleym2@union.edu**
**Union.edu/titleix**

### A. Deputy Title IX Coordinator – Athletics

If you have a sexual misconduct complaint against a Union College athlete, coach, or athletics' administrator; or visiting student athlete, coach, athletic personnel or spectator; or you have a complaint of gender inequity in Union College's athletic programs, you may contact the Senior Associate Director of the Athletic Department who will facilitate the handling of the complaint alongside the Title IX Coordinator. Union College has designated the following individual to serve as Deputy Title IX Coordinator for Athletics: Joanne Little, Senior Associate Director of Athletics, 618-388-6433, littlej@union.edu.

## VII.    Resources, Reporting, and Responsible Employees

The College is committed to treating all members of the community with dignity, care and respect. A student, staff, or faculty member who experiences or is affected by sexual misconduct, relationship violence, sexual harassment, or stalking whether as a complainant, a respondent, or a third party, will have equal access to support and counseling services through the College. Interim remedies are also available to all parties. The College has a strong interest in supporting survivors of sexual misconduct, relationship violence, sexual harassment, and stalking and encourages all individuals or third party witnesses to report any incident to the College.

The College recognizes that deciding whether or not to make a report, either to the College or law enforcement, and choosing how to proceed can be difficult decisions Making a report means telling someone in authority what happened -- in person, by telephone, in writing or by email. At the time a report is made, a complainant does not have to decide whether or not to request any particular course of action, nor does a complainant need to know how to label what happened. Choosing to make a report, and deciding how to proceed after making the report, can be a process that unfolds over time. The College provides support that can assist each individual in making these important decisions, and to the extent legally possible will respect an individual's autonomy in deciding how to proceed. In this process, the College will balance the individual's interest with its obligation to provide a safe and non-discriminatory environment for all members of the College community.

There are many resources available on campus and in the surrounding community. As detailed below, there are confidential resources which by law cannot share information without the consent of the individual seeking assistance. There are also a variety of College resources that will be discreet and private, but are not considered confidential. These resources will maintain the privacy of an individual's information within the limited circle of those involved in the resolution of a complaint under this policy. For more information about the difference between privacy and confidentiality, see Section V above.

The College encourages all individuals to seek assistance from a medical provider and/or law enforcement immediately after an incident of sexual misconduct. This is the best option to ensure preservation of evidence and to begin a timely investigative and remedial response. The College will help any student, staff, or faculty member to get to a safe place and will provide transportation to the hospital, coordination with law enforcement, and information about on- and off-campus resources and options for resolution.

The College also strongly encourages all individuals to make a report to the College and to local law enforcement, although neither is required.  These reporting options are not mutually exclusive. Both internal and criminal reports may be made simultaneously.

Any individual who reports sexual misconduct, relationship violence, sexual harassment, or stalking can be assured that all reports will be investigated and resolved in a fair and impartial manner. The complainant, respondent, and all individuals involved can expect to be treated with dignity and respect. In every report under this policy, the College will make an immediate assessment of any risk of harm to the complainant or to the broader campus

community and will take steps necessary to address those risks. These steps will include interim measures to provide for the safety of the individual and the campus community.

### A. Confidential Resources

The College encourages all community members to make a prompt report of any incident of sexual misconduct, relationship violence, sexual harassment, or stalking to local law enforcement and the College. For individuals who are not prepared to make a report, or who may be unsure what happened, but are still seeking information and support, there are several legally-protected confidential resources available as designated below. These confidential resources will not share information with the College or anyone else without the individual's permission.

| STUDENTS' CONFIDENTIAL CAMPUS RESOURCES | |
| --- | --- |
| Sexual Assault Resource Hotline | **518-388-6600** |
| Counseling Center-Wicker Wellness Center | **518-388-6161** |
| Health Services-Wicker Wellness Center | **518-388-6120** |
| Campus Minister | **518-388-6618** |
| **EMPLOYEES' CONFIDENTIAL CAMPUS RESOURCES** | |
| Employee Assistance Program (EAP) | **1-800-828-6025** |
| **CONFIDENTIAL OFF CAMPUS (LOCAL) RESOURCES (Students & Employees)** | |
| Sexual Assault & Crime Victims Services | **518-346-2266** |
| Schenectady YWCA Domestic Violence Hotline | **518-374-3386** |

### B. Confidential Medical Resources

A medical provider can provide emergency and/or follow-up medical services. The medical exam, referred to as a SANE (sexual assault nurse examiner) or forensic exam, has two goals: first, to diagnose and treat the full extent of any injury or physical effect (including prevention of sexually transmitted illnesses and pregnancy) and second, to properly collect and preserve evidence. There is a limited window of time (typically within 96 hours) following an incident of sexual assault to preserve physical and other forms of evidence. Taking the step to gather evidence immediately does not commit an individual to any particular course of action. The decision to seek timely medical attention and gather any evidence, however, will preserve the full range of options to seek resolution under this policy or through the pursuit of criminal prosecution.

On campus, Wicker Wellness Center can provide medical care to students; however, Wicker is not equipped for forensic/SANE examinations or able to provide services to staff and faculty. Members of the Union community are welcome to seek medical services wherever they are most comfortable. Below are two options for seeking a SANE exam nearby to campus.

| EMERGENCY MEDICAL SERVICES NEAR CAMPUS PROVIDING SANE EXAMINATIONS | |
|---|---|
| Ellis Hospital Emergency Department, 1101 Nott Street, Schenectady | 518-243-4121 |
| Ellis Emergent Care Center, 103 Sitterly Road, Clifton Park | 518-579-2800 |

### C.  Additional Campus Resources

In addition to the confidential resources listed above, Union College community members have access to a variety of resources provided by the College. The staff members listed below are trained to support individuals affected by sexual harassment or misconduct and to coordinate with the Title IX Coordinator consistent with the College's commitment to a safe and healthy educational environment. While not bound by confidentiality, these resources will maintain the privacy of an individual's information within the limited circle of those involved in the Title IX resolution process.

| CAMPUS RESOURCES | |
|---|---|
| **Melissa Kelley, Title IX Coordinator**<br>403E Reamer Campus Center<br>Union.edu/titleix | 518-388-6865<br>Kelleym2@union.edu |
| **Campus Safety**<br>College Park Hall<br>Union.edu/safety | 518-388-6911<br>Campussafety@union.edu |
| **Dean of Students**<br>306 Reamer Campus Center<br>Union.edu/dean | 518-388-6116<br>Dos_office@union.edu |
| **Human Resources**<br>17 South Lane<br>Union.edu/hr | 518-388-6108<br>hr@union.edu |
| **Dean of Faculty – Strom Thacker**<br>Feigenbaum Hall | 518-388-6102<br>thackers@union.edu |
| **Dean of Diversity and Inclusion – Gretchel Hathaway**<br>Feigenbaum Hall | 518-388-8327<br>hathawag@union.edu |

### D.  Emergency Reporting Options

Complainants have the right to notify or decline to notify law enforcement. The College strongly encourages all individuals to seek assistance from law enforcement immediately after an incident of sexual misconduct, intimate partner violence, or any other prohibited conduct.  This is the best option to ensure preservation of evidence and to begin a timely investigative and remedial response.  Police have unique legal authority, including the power to seek and execute search warrants, collect forensic evidence, make arrests, and assist in seeking emergency protective orders. The College will help any Union community member to get to a safe place and will provide transportation to the hospital, coordination with law enforcement, and information about on- and off-campus resources and options for resolution.

**EMERGENCY CONTACT INFORMATION**

| | |
|---|---|
| New York State Police, Sexual Assault Victims Unit | 1-844-845-7269 |
| Schenectady Police Department, 531 Liberty Street, Schenectady | 911 or 518-382-5200 |
| Campus Safety (On Campus Emergencies) | 518-388-6911 |

### E. Campus Reporting Options/Responsible Employees

The College encourages all students, staff, and faculty to report misconduct to College staff members listed above or a College employee whom the complainant trusts and feels comfortable with. In general, most College employees do not have legally protected confidentiality. Under Title IX, a College is required to take immediate and corrective action if a Responsible Employee knew or, in the exercise of reasonable care, should have known about sexual misconduct, relationship violence, sexual harassment, or stalking.

A Responsible Employee includes any employee who:

- Has the authority to take action to redress the harassment;
- Has the duty to report to appropriate school officials sexual harassment or any other misconduct by students or employees; or
- A student could reasonably believe has the authority or responsibility to take action.

Using this lens, employees with supervisory and leadership responsibilities on campus are considered Responsible Employees. This includes, for example, faculty, coaches, administrators, Resident Directors, and Resident Advisors.

The College requires that all Responsible Employees share a report of misconduct with the Title IX Coordinator or the Director of Campus Safety. The Title IX Coordinator or the Director of Campus Safety will notify the Senior Associate Dean of Students or appropriate administrator. The Title IX Coordinator will lead the Title IX Team, where membership may vary depending on whether the involved parties are students, faculty, and/or staff.

A student, staff, or faculty member may desire to report prohibited conduct to the College but to maintain confidentiality; if so, the Title IX Coordinator will evaluate such requests. Where a Complainant requests that the Complainant's name or other identifiable information not be shared with the Respondent or that no formal action be taken, the Title IX Coordinator, in conjunction with the Title IX team, will balance the Complainant's request with its dual obligation to provide a safe and non-discriminatory environment for all College community members and to remain true to principles of fundamental fairness that ordinarily provide for notice and an opportunity to respond before action is taken against a Respondent. In making this determination, the College may consider the seriousness of the conduct, the respective ages and roles of the Complainant and Respondent, whether there have been other complaints or reports of harassment or misconduct against the Respondent, and the rights of the Respondent to receive notice and relevant information before disciplinary action is sought.

The College will take all reasonable steps to investigate and respond to the complaint consistent with the request for confidentiality or request not to pursue an investigation, but its ability to do so may be limited based on the nature of the request by the Complainant. Where the College is unable to take action consistent with the request of the Complainant, the Title IX Coordinator or a member of the Title IX team will inform the Complainant about the chosen course of action, which may include the College seeking disciplinary action against a Respondent. Alternatively, the course of action may also include steps to limit the effects of the alleged harassment and prevent its recurrence that do not involve formal disciplinary action against a Respondent or revealing the identity of the Complainant.

For more information about the role of Responsible Employees, see the Title IX Website, www.union.edu/titleix for a FAQ document addressing the responsibilities associated with this designation.

### F. *Anonymous Reporting*

Any individual may make an anonymous report concerning an act of sexual misconduct, relationship violence, sexual harassment, or stalking. An individual may report the incident without disclosing his/her name, identifying the respondent or requesting any action. Depending on the extent of information available about the incident or the individuals involved, however, the College's ability to respond to an anonymous report may be limited. The Anonymous Reporting Form can be found at:

https://cm.maxient.com/reportingform.php?UnionCollege&layout_id=9

The form must be submitted to Campus Safety or the Title IX Coordinator who will determine any appropriate steps, including individual or community remedies as appropriate, and in consultation with the Director of Campus Safety, compliance with all Clery Act obligations.

### G. *Reporting to External Agencies*

In addition to reporting to law enforcement or the College, students, faculty, and staff should be aware of the following external governmental agencies that investigate and prosecute complaints of prohibited discrimination and harassment:

- Title IX Compliance. Inquiries or complaints concerning the College's compliance with Title IX may be referred to the U.S. Department of Education's Office for Civil Rights, 1 (800) 368-1019.

- Employment Discrimination or Harassment. Any employee may pursue any charge of discrimination or harassment with the New York Division of Human Rights, (518) 474-2705 or with the US Equal Opportunity Commission, 1 (800) 669-4000.

### H. Other Reporting Considerations

#### 1. Timeliness and Location of Incident

Complainants and third-party witnesses are encouraged to report sexual misconduct, relationship violence, sexual harassment, and stalking as soon as possible in order to maximize the College's ability to respond promptly and effectively. The College does not, however, limit the time frame for reporting. If the respondent is not a member of the Union College community, the College will still seek to meet its Title IX obligation by taking steps to end the sexual misconduct, relationship violence, sexual harassment, or stalking, prevent its recurrence, and address its effects, but its ability to take disciplinary action against the respondent is limited.

An incident does not have to occur on campus to be reported to the College. Off-campus conduct that is likely to have a substantial effect on the complainant's on-campus life and activities or poses a threat or danger to members of the Union College community may also be addressed under this policy.

#### 2. Amnesty for Alcohol or Other Drug Use for Students

The health and safety of every student at Union College is of utmost importance. The College recognizes that students who have been drinking alcohol and/or using other drugs (whether such use is voluntary or involuntary) at the time that violence, including but not limited to sexual misconduct, relationship violence, sexual harassment, or stalking occurs may be hesitant to report such incidents due to fear of potential consequences for their conduct. Union College strongly encourages students to report sexual misconduct, relationship violence, sexual harassment, or stalking to College officials. A bystander acting in good faith or a reporting individual acting in good faith that discloses any incident of sexual misconduct, relationship violence, sexual harassment, or stalking to College officials or law enforcement will not be subject to Union College's Code of Conduct action for violations of alcohol and/or other drug use policies occurring at or near the time of the commission of sexual misconduct, relationship violence, sexual harassment, or stalking.

#### 3. False Reports

The College will not tolerate intentional false reporting of incidents. The College takes the accuracy of information very seriously as a charge of sexual misconduct, relationship violence, sexual harassment, or stalking may have severe consequences. A good-faith complaint that results in a finding of not responsible is not considered a false or fabricated accusation of sexual misconduct. However, when a complainant or third party witness is found to have fabricated allegations or given false information with malicious intent or in bad faith, the complainant or third party witness may be subject to disciplinary action. It is a violation of the Code of Student Conduct to make an intentionally false report of any policy violation, and it may also violate state criminal statutes and civil defamation laws

4.  *Take Back the Night and Other Public Awareness Events*

Consistent with guidance from the Office for Civil Rights of the Department of Education, public awareness events such as "Take Back the Night," the Clothesline Project, candlelight vigils, protests, or other forums in which community members disclose incidents of Prohibited Conduct do not initiate the College's Title IX obligations, including its obligation to investigate reports of sexual harassment or sexual violence.  Such events may, however, inform the need for campus-wide educational and prevention efforts, and the College may implement broad community initiatives in response to such events where appropriate.

**VIII.  Timely Warning, Coordination with Law Enforcement, Initial Title IX Assessment, and Requests for Confidentiality**

*A.  Timely Warning*

If a report of misconduct discloses a serious or continuing threat to the Union College community, the College may issue a campus wide timely warning (which can take the form of an email to campus) to protect the health or safety of the community. The timely warning will not include identifying information about the complainant. Even where there is no imminent threat, the College may send campus-wide e-mail notifications on all reported sexual misconduct.

At no time will the College release the name of the complainant to the general public without the express consent of the complainant. The release of the respondent's name, if a student, to the general public is guided by Family Educational Rights and Privacy Act (FERPA) and the Clery Act.

All College proceedings are conducted in good faith compliance with the requirements of FERPA, the Clery Act, Title IX, Article 129-B of the New York State Education Law, and other federal laws. No information shall be released from such proceedings except as required or permitted by law and College policy.

*B.  Coordination with Law Enforcement*

Upon receipt of a report, Campus Safety will comply with any legal requirements to notify local law enforcement if a violent felony is suspected to have occurred. To the fullest extent permitted by law, the identity of the complainant will not be disclosed without his/her express permission being given. Physical evidence must be properly documented and stored by local law enforcement to maintain the ability for it to be presented as evidence and used in a legal case if a complaint is filed by the complainant with local law enforcement.

Information regarding Campus Safety's Emergency Response Protocol can be found at: http://www.union.edu/offices/safety/

The College encourages complainants to pursue criminal action for incidents of sexual misconduct, relationship violence, sexual harassment, and stalking that may also be crimes under New York law. The College, through Campus Safety, will assist a complainant in making a criminal report and cooperate with law enforcement agencies if the complainant decides to pursue the criminal process to the extent permitted by law.

The College's Sexual Misconduct Policy may contain provisions, including definitions, burden of proof, and standards that differ from New York criminal law. A Complainant may seek recourse under this policy and/or pursue criminal action. Neither law enforcement's determination whether or not to prosecute a respondent nor the outcome of any criminal prosecution are determinative of whether a violation of this policy has occurred. Proceedings under this policy may be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus.

At the request of law enforcement, the College may agree to defer its Title IX fact-gathering until after the initial stages of a criminal investigation, but the College is not obligated to make such deferral. The College will nevertheless communicate with the complainant regarding Title IX rights, procedural options, and the implementation of interim measures to assure safety and well-being. If the College defers its Title IX fact-gathering, the College will promptly resume its Title IX fact gathering as soon as it is informed that law enforcement has completed its initial investigation or once it decides to stop deferring fact- gathering during a criminal investigation.

### C. Initial Title IX Assessment

Upon receipt of a report, the College, through the coordinated efforts of the Title IX Team. The Title IX Team may include the Senior Associate Dean of Students, the Director of Campus Safety, the Dean of Faculty or designee, and/or a representative from Human Resources. Collectively, the Title IX Coordinator and the individuals supporting the Coordinator are defined as the "Title IX Team." The Title IX Team is a small circle of individuals who have a "need to know" of any alleged prohibited conduct to effectuate this Policy. The Title IX Team will conduct an initial Title IX assessment.

The first step of the assessment will usually be a preliminary meeting between the complainant and the Title IX Team. The purpose of the preliminary meeting is to gain a basic understanding of the nature and circumstances of the report; it is not intended to be a full forensic interview. At this meeting, the complainant will be provided with information about resources, procedural options and interim remedies.

As part of the initial assessment of the report, the Title IX team will:

- Assess the nature and circumstances of the allegation.
- Address immediate physical safety and emotional well-being needs.
- Notify the complainant of his/her right to contact law enforcement and seek medical treatment, including the importance of preservation of evidence.

- Enter the report into the College's daily crime log.
- Provide the complainant with information about:
  - On- and off-campus resources including intervention, mental health counseling, and medical services, which shall include information on whether such resources are available at no cost or for a fee.
  - Sexually transmitted infections, sexual assault forensic examinations, and resources available through the New York State Office of Victim Services (found at https://ovs.ny.gov/ )
  - The range of interim accommodations and remedies.
  - An explanation of the procedural options, including Informal Resolution and Formal Resolution and the process for filing a Formal Complaint or Grievance
- Assess for pattern evidence or other similar conduct by respondent.
- Discuss the complainant's expressed preference for manner of resolution and any barriers to proceeding.
- Explain the College's policy prohibiting retaliation.

This initial review will proceed to the point where a reasonable assessment of the safety of the individual and of the campus community can be made. Thereafter, an investigation may continue depending on a variety of factors, such as the complainant's wish to pursue disciplinary action (Formal Complaint), the complainant's request to maintain confidentiality, the risk posed to any individual or the campus community by not proceeding, and the nature of the allegation.

If the complainant elects to file a disciplinary or Formal Complaint, a complainant's Statement, in addition to other forms, is required to initiate the action.

At the conclusion of the Title IX assessment, the Title IX Team will determine the appropriate manner of resolution and, if appropriate, refer the report for further Investigation, Informal Resolution or Formal Resolution.

The determination/recommendation as to how to proceed will be communicated to the complainant in writing. Depending on the circumstances and requested resolution, the respondent may or may not be notified of the report or resolution. A respondent will be notified when the College seeks action that would impact a respondent, such as protective measures that restrict his/her movement on campus, the initiation of an investigation after the initial assessment or the decision to involve the respondent in Informal Resolution.

### D.  Interim Suspension - Students

An interim suspension of the respondent may be imposed only by the Dean of Students (or designee) and shall become effective immediately without prior notice whenever there is evidence that the continued presence of the respondent poses a substantial and continuing threat to the complainant or to the College community. The complainant may submit evidence supporting an interim suspension. Should an interim suspension be issued and resolution of the matter that prompted it is not resolved within **two (2) weeks**, the interim suspension may convert to an administrative leave of absence. The College may notify parent(s) or legal guardian(s) of dependent students or students under eighteen (18) years of age of the interim suspension and, when applicable, of any alternative housing arrangements. Additionally, in accordance with Article 129-B, Section 6444, Subsection 4(f), when an interim suspension is imposed, the respondent is entitled to a prompt review of the need for, and terms of, an interim suspension, including a potential modification and shall be allowed to submit evidence to support his/her request.

### E.  Request for Confidentiality

When a complainant requests that his/her name or other identifiable information not be shared with the respondent or that no formal action be taken, the Title IX Team will balance this request with its dual obligation to provide a safe and non-discriminatory environment for all College community members and to remain true to principles of fundamental fairness that require notice and an opportunity to respond before action is taken against a respondent. In making this determination, the College may consider the following factors, including but not limited to:

- Whether the respondent has a history of violent behavior or is a repeat offender.

- Whether the incident represents an escalation in unlawful conduct on behalf of the respondent from previously noted behavior.

- The increased risk that the respondent will commit additional acts of violence.

- Whether the respondent used a weapon or force.

- Whether the complainant is a minor.

- Whether the College possesses other means to obtain evidence such as security footage, and whether available information reveals a pattern of perpetration at a given location or by a particular group.

The College will take all reasonable steps to investigate and respond to the complaint consistent with the request for confidentiality or request not to pursue an investigation, but its ability to do so may be limited based on the nature of the request by the complainant. Where the College is unable to take action consistent with the request of the complainant, a member of the Title IX Team will inform the complainant about the chosen course of action, which may include the College seeking disciplinary action against a respondent. Alternatively, the course of action may also include steps to limit the effects of the

alleged harassment and prevent its recurrence that do not involve formal disciplinary action against a respondent or revealing the identity of the complainant.

## IX.    Interim Measures, Remedies, and Accommodations

Upon receipt of a report, the College will impose reasonable and appropriate interim measures designed to eliminate the hostile environment and protect the parties involved.  The College will make reasonable efforts to communicate with the parties to ensure that all safety, emotional and physical well-being concerns are being addressed. Interim measures may be imposed regardless of whether formal disciplinary action is sought by the Complainant or the College.

A complainant or respondent may request a No Contact Order or other protection, or the College may choose to impose interim measures at its discretion to ensure the safety of all parties, the broader College community and/or the integrity of the process.

All individuals are encouraged to report concerns about failure of another individual to abide by any restrictions imposed by an interim measure. The College will take immediate and responsive action to enforce a previously implemented measure.

The respondent and the complainant, upon written request to the Title IX Team, shall have the right to:

- request a review of the need for, and terms of, interim measures which were imposed in accordance with the Sexual Misconduct Policy; and/or

- request modifications to the terms of the interim measures.

The respondent and the complainant shall be allowed to submit evidence in support of their request. The request must be initiated within five (5) days of the imposition of the interim measures.

The Title IX Team shall review the request and supporting evidence, if submitted, promptly. A decision will be issued within three (3) days of receipt of the written request.  The decision is final.

### A.  Range of Measures

Interim measures will be implemented at the discretion of the College. Potential remedies, which may be applied to the complainant and/or the respondent, include:

- Access to counseling services and assistance in setting up initial appointment, both on and off campus.

- Imposition of campus "No Contact Order."

- Rescheduling of exams and assignments (in conjunction with appropriate faculty).

- Providing alternative course completion options (with the agreement of the appropriate faculty).

- Change in class schedule, including the ability to take an "incomplete," drop a course without penalty or transfer sections (with the agreement of the appropriate faculty and/or Dean of Studies).

- Change in work schedule or job assignment (with the agreement of the Chief of Human Resources and/or responsible Vice President).

- Change in on-campus housing.

- Arranging to dissolve a housing contract and pro-rating a refund in accordance with campus housing policies.

- Assistance from College support staff in completing housing relocation for students.

- Limit an individual or organization's access to certain College facilities or activities pending resolution of the matter.

- Voluntary leave of absence.

- Providing an escort to ensure safe movement between classes and activities.

- Providing student medical services.

- Providing academic support services.

- Interim suspension or College-imposed leave.

- Any other remedy that can be tailored to the involved individuals to achieve the goals of this policy.

- To seek an Order of Protection from a court of competent jurisdiction; the College will enforce the order of protection, once notified by the complainant of its existence and terms, or request local law enforcement to make an arrest.

### B. No Contact Order

In cases involving allegations of sexual misconduct, relationship violence, sexual harassment, or stalking, the appropriate Dean(or designee), Administrator, or the Title IX Coordinator, regardless of whether the complainant wishes to pursue a formal or informal resolution or no resolution, shall afford each party (the complainant and respondent) the opportunity to request a No Contact Order. Each request shall be reviewed promptly. Additionally, a No Contact Order may be issued upon notification of a report of sexual misconduct, relationship violence, sexual harassment, or stalking if appropriate to do so in the judgment of the appropriate Dean (or designee), administrator, or the Title IX Coordinator.

A No Contact Order typically will include a directive that the complainant and respondent refrain from having contact with one another, directly or through third parties, whether in person or via electronic means, pending the investigation and resolution of the matter. If the complainant and respondent observe each other in a public place, it shall be the responsibility of the respondent to leave the area immediately and without directly

contacting the complainant. The No Contact Order may establish a schedule for the complainant and respondent to access applicable buildings and properties when the complainant is not accessing the same. The Dean (or designee), administrator, or Title IX Coordinator shall make the No Contact Order available to the complainant and respondent as soon as it is issued.

In the event that the Title IX Team or Campus Safety is notified of a violation of the terms of a No Contact Order, the party in alleged violation of the No Contact Order shall be provided an opportunity to review the matter with the appropriate administrator. If the Administrator, based upon the information available, decides that the No Contact Order has been violated, the Administrator may elect to suspend or discipline the party temporarily pending the resolution of the underlying complaint. The Administrator may also take further protective action that he/she deems appropriate concerning the interaction of the parties pending the outcome of disciplinary action or adjudication process, if any, including without limitation asking the appropriate Dean (or designee) or administrator to alter the one's schedule and/or housing, if applicable.

## X. Training and Prevention Programming

The College is committed to providing a safe and nondiscriminatory environment for all members of the College community. The College is equally committed to the prevention of prohibited conduct through regular and ongoing education and awareness programs. Incoming students and new employees receive primary prevention and awareness programming as part of their orientation, and returning students and current employees receive ongoing training and related programs. The College provides training to students, staff, and faculty members to ensure they understand the policy and the topics and issues related to maintaining an education and employment environment free from harassment and discrimination.

The College offers online and in-person training to students, staff, and faculty to ensure they understand the policy, including how to report incidents of prohibited conduct, and how to access confidential sources following an incident of prohibited conduct. Topics include Title IX and what constitutes prohibited conduct under the policy; the definition of affirmative consent, including examples; how the College analyzes whether conduct was unwelcome and the existence of a hostile environment for purposes of sexual or gender-based harassment; options for reporting prohibited conduct; the availability of confidential sources, on and off grounds; the College's resolution options for pursuing complaints under the policy; the potential sanctions for violating the policy; effects of trauma, including neurobiological changes; the role alcohol and drugs often play in incidents of prohibited conduct, including the deliberate use of alcohol and/or other drugs to perpetrate sexual assault; strategies and skills for bystanders to intervene to prevent sexual, gender-based, and other forms of interpersonal violence; how to report prohibited conduct to Campus Safety or local law enforcement and the ability to pursue, simultaneously, a disciplinary and criminal complaint; and the protection against retaliation afforded by the policy.

For information about the training and programming available on campus, please contact the Title IX Coordinator.

# APPENDIX A
# RESOLUTION OF A COMPLAINT AGAINST A STUDENT



**XI.**     **Appendix A: Resolution of a Complaint Against a Student**

The Sexual Misconduct Adjudication Process is the adjudication process applicable to complaints against Union College students accused of sexual misconduct (including sex or gender-based discrimination or harassment; sexual misconduct; and intimate partner violence (including domestic and dating violence). As outlined in the Reporting section of the Sexual Misconduct Policy, an individual who wishes to make a report of sexual or other prohibited conduct is encouraged to make a report directly to the Title IX Coordinator, the Dean of Students Office, or Campus Safety. In every instance under this policy, the College, through the coordinated efforts of the Title IX Coordinator, the Senior Associate Dean of Students/Director of Student Conduct and the Director of Campus Safety will conduct an initial Title IX Assessment will make an immediate assessment of imminent risk to the individual or the campus community and respond accordingly.

This adjudication process is intended to be prompt, fair and impartial and will provide for disciplinary action, as appropriate.  This adjudication process should be read in conjunction with the College's Sexual Misconduct Policy, which also prohibits retaliation. As set forth in the Union College Sexual Misconduct Policy, sex discrimination and violence have no place at Union College and will not be tolerated. Sex discrimination and violence by or against any Union College community member violates the College's core values, including the College's commitment to providing a safe community and equal opportunity to all.  Sex and gender based discrimination, harassment and violence is prohibited by Union College policy and can constitute violations of state and/or federal law.

### A. *Informal Resolution*

Informal resolution is designed to assist the parties in reaching a mutually agreeable resolution. An individual wishing to employ an informal resolution of a complaint will meet with the Senior Associate Dean of Students and Title IX Coordinator who will explain the process and options available to the student.

The Dean of Students Office may seek to resolve certain sexual misconduct cases through an informal process involving both the Complainant and accused. For example, a Complainant and Respondent may agree with the office that education and training for the Respondent are an appropriate and sufficient conclusion. If, based on the information provided about the incident, the Dean of Students office believes such a resolution is possible and appropriate, the office will speak with the Complainant. If the Complainant agrees, the office will then speak with the Respondent. If both the Complainant and Respondent are satisfied with a proposed resolution and the office believes the resolution satisfies the College's obligation to provide a safe and nondiscriminatory environment for all students, the resolution will be implemented, the disciplinary process will be concluded and the matter will be closed. If these efforts are unsuccessful, the disciplinary process will continue. Before starting these discussions, the Dean of Students Office will notify the Complainant and Respondent that each has the right to end the informal process at any time. **The College will not use informal resolution for cases involving allegations of sexual assault.**

The Dean of Students and the Title IX Coordinator will maintain records of all reports and conduct referred for informal resolution. Informal resolution will typically be completed within thirty (30) days of the initial report.

### B.  Sexual Misconduct Adjudication Process

Formal Resolution of a complaint under this policy will occur through the use of an Adjudication Panel. A brief outline of the process is provided below. A description of each step in the process is outlined thereafter.

1. Initiating the Disciplinary Process
2. Responding to a Disciplinary Complaint
3. Fact Finding Investigation
4. Investigative Report
5. Document Review
6. Notice of Charges
7. Notice of Adjudication
8. Panel Adjudication/Decision
9. Sanctions
10. Outcome Letter
11. Appeals
12. Concerns about the Implementation of this Policy
13. Integrity of Process
14. Conclusion of Case

### 1.  Initiating the Disciplinary Process

A person who has experienced an incident of sexual misconduct, including sexual harassment, sex/gender discrimination, sexual assault, relationship violence, stalking, sexual exploitation and any other sexual misconduct committed by a Union College student, may file a complaint against the student responsible for that conduct. Complaints may be filed with the Title IX Coordinator, Campus Safety, or the Senior Associate Dean of Students/Director of Student Conduct, who are also known collectively as the Title IX Team.

#### a.  Complainant Initiated Process

The individual bringing the allegation is called the Complainant. The Complainant will be asked to submit three forms to initiate the disciplinary complaint. The Complainant's forms should be signed, dated, and submitted to the Title IX Coordinator. The Complainant is welcome to have an Advisor attend any meetings scheduled.

b.   <u>Timing of Complaints</u>

There is no time limit for the submission of a complaint alleging sexual misconduct. A complaint may be filed at any time as long as the Respondent remains enrolled at the College. A complaint received after the term has ended or during a College break may result in a delay in the adjudication of the complaint until the beginning of the subsequent term in which the Respondent is enrolled. Please note that the College only has jurisdiction over students when they are enrolled.

The College reserves the right to initiate adjudication of a complaint immediately to protect the interests and safety of the College community even when the incident takes place after the end of the term.

c.   <u>Complaint Form</u>

Prior to completing the Complainant's Statement, the Complainant will be asked to complete a less detailed Complaint Form. This document will contain basic information such as the time, date, location, and brief description of the allegations underlying the disciplinary complaint. This Complaint Form must contain sufficient detail to permit a reasonable person to understand the charges being brought and to be able to adequately respond. The Respondent will be given access to the Complaint Form prior to filing a written response statement.

d.   <u>Complainant's Statement</u>

For a Complainant to file a disciplinary complaint against a student, the Complainant must submit a written statement detailing the allegations of the sexual misconduct. This statement is the first opportunity for the Complainant to describe the allegations against the Respondent. The statement should communicate the Complainant's full account of the event and its context, as well as the Complainant's reflections. To facilitate the process, the Complainant should follow these guidelines:

- **Describe the event(s) in full detail**. Relate in full the facts of the incident as you recall them. Take care to distinguish between what you saw, heard, or experienced first-hand from what you may have learned later from others.

- **Describe the context**. It is important for you to give your perception of the Respondent's conduct and the context in which the alleged incident occurred, including its location, and any witnesses to it.

- **Reflect on the event(s)**. It is helpful for you to provide any conclusions you have drawn about the incident, stating clearly why you believe the Respondent's actions may have violated College policy or the Code of Conduct.

40

The Complainant's Statement should include the name of the Respondent, the date and location of the alleged sexual misconduct and the details of the alleged misconduct. This statement should provide as much detail as possible about the facts surrounding the alleged sexual misconduct.

A descriptive list of all sources of information (e.g., witnesses, correspondence, records, etc.) should be attached to the Complainant's Statement. This list should include information which the Complainant believes should be considered in deciding this disciplinary complaint, along with a brief explanation of why this information would be relevant and helpful to the process. The sources and/or location of this supporting information should be identified. Complainants are advised to not attempt to obtain this information themselves. The Investigator(s) will solicit any relevant statements or documents referenced through this process.

The Complainant's Statement is one of the most important documents to be considered in the Sexual Misconduct Adjudication Process. Once submitted, the Complainant's Statement may not be amended, but it may be supplemented through interviews with the Investigator(s) as set forth in Section C below. The statement must be prepared by the Complainant.

It is unacceptable for a Complainant to submit a statement written by others, including parents, support persons, or attorneys. However, Complainants are encouraged to share a draft of the statement with a support person who is well-positioned to discuss, among other matters, the statement's style, organization, length, and clarity, while also anticipating questions it may raise for the fact-finder. The Complainant will be required to sign a statement verifying that he/she authored the Complainant's Statement.

The Respondent will not be allowed to see the Complainant's Statement until **after** the Respondent has filed their statement in response to the original Complaint Form. Once the Respondent has submitted their statement, they will be given a copy of the Complainant's Statement. The Complainant will also be given a copy of the Respondent's Statement.

e.   Limited Disclosure/ Non-Retaliation Acknowledgment

The Complainant will be required to sign a Limited Disclosure/Non-Retaliation Acknowledgment, agreeing to limit disclosure of the disciplinary complaint, including the facts of the underlying complaint, to attorneys, counselors, clergy, physicians, other therapeutic professionals, family, and others to assist the Complainant in the process or others who may have relevant information with respect to the underlying complaint. The Complainant agrees not to harass, threaten, and/or otherwise inappropriately compel others in an effort to provide information with respect to the underlying complaint. This limited disclosure obligation is to preserve the integrity of the investigative process and also to prevent allegations of retaliation. Through this Acknowledgment, the Complainant also agrees to refrain from any retaliatory conduct against the Respondent or any

witnesses in the matter and may be responsible for any retaliation by persons affiliated with the Complainant (i.e. a friend or family member).

f.   No Contact Order

Upon the initiation of a complaint under the Sexual Misconduct Adjudication Process, a "No Contact Order" will be put into place between the Complainant and Respondent by the Senior Associate Dean of Students/Director of Student Conduct. The No Contact Order will bar any communication or contact between the Complainant and Respondent and will prohibit any interaction or exchange between them, either directly or through others (e.g. friends, family members, attorneys, others, etc.). The Title IX Team will work with the Complainant and Respondent to facilitate the terms of the No Contact Order so that they may attend classes and use College facilities as appropriate. The goal of the No Contact Order is to allow both the Complainant and Respondent, to the extent possible, to continue their academic and social endeavors while still avoiding contact during the adjudication of the complaint. The No Contact Order can be as detailed as necessary, include specific plans of where the Complainant and Respondent can be at specific times. A No Contact Order can be kept in place after the conclusion of the Sexual Misconduct Adjudication Process. **In cases where a demonstrated violation of the No Contact Order has been shown, the responsible party may be separated from the College pending the final resolution of the disciplinary complaint as an interim measure.** The Complainant and/or Respondent may also be able to seek restraining orders or other orders of protection outside of the College, through the courts; the College will also endeavor, as possible, to enforce these orders of protection on campus. Information about obtaining these types of orders can be obtained from Campus Safety by calling 518-388-6911 or through local law enforcement.

g.   Administrative Complaints

Union College may independently initiate a disciplinary complaint against a student under this policy. In this type of Administrative Complaint, the College will act as the Complainant in the adjudication of a sexual misconduct complaint against a student. Such complaints will proceed under the processes outlined in this policy and may result in disciplinary action as if the Complainant were a student. A victim/survivor will be considered a witness in an Administrative Complaint and will be given the option to be as involved or as uninvolved as they wish.

The College affirms the right of a victim/survivor to decide whether they wish to be involved in a Sexual Misconduct Adjudication Process. At the same time, and under limited circumstance, when the conduct at issue involves a threat to the campus safety (which includes but is not limited to the involvement of violence, the use of weapons, or repeat offenses) the College will be compelled to move forward with a Sexual Misconduct Adjudication Process. Under these circumstances and whenever possible, the College will endeavor to inform the victim/survivor of its need to move forward prior to commencing the Sexual Misconduct Adjudication Process, and will inform the victim/survivor how their

information will be shared. Support resources and interim measures will be available as appropriate and a No Contact Order will be put into place.

To initiate an Administrative Complaint, the College will obtain enough information about the incident to prepare a complaint statement which will be used in place of the Complainant's Statement within this process. The gathering of information for the complaint statement usually involves obtaining an account from the victim/survivor, if they are willing to provide such information. After obtaining that account, a victim/survivor will be treated as a witness within the adjudication of the Administrative Complaint. The victim/survivor will have the option to receive information regarding the progress of the adjudication or may request no to receive such information. Although the victim/survivor is not the initiator of this action, they will be informed of the outcome. At any point, the victim/survivor may join the Sexual Misconduct Adjudication Process as a Complainant.

The Respondent will be notified when an Administrative Complaint is initiated and will be provided with a letter from the appropriate office in place of the Complaint Form. The Respondent will be given the opportunity to submit a written Respondent's Statement in response. Once the Respondent has submitted their written response they will be given a copy of the Complaint Statement. Then the adjudication of the complaint will proceed under the process outlined herein.

### 2. *Responding To a Disciplinary Complaint*

The person against whom the disciplinary complaint is brought is called the Respondent. The Respondent shall be given written notification when a disciplinary complaint has been filed against him or her.

#### a. Initial Notification Meeting

Within five (5) days of receiving notice of the disciplinary complaint, the Respondent must meet with the Title IX Team. The Respondent is welcome to have an Advisor attend.

#### b. Limited Disclosure/Non-Retaliation Acknowledgement

The Respondent will be required to sign a Limited Disclosure/Non-Retaliation Acknowledgment, agreeing to limit disclosure of the disciplinary complaint, including the facts of the underlying complaint, to attorneys, counselors, clergy, physicians, other therapeutic professionals, family, and others to assist the Respondent in the process or others who may have relevant information with respect to the underlying complaint. The Respondent agrees not to harass, threaten, and/or otherwise inappropriately compel others in an effort to provide information with respect to the underlying complaint. This limited disclosure obligation is to preserve the integrity of the investigative process and also to prevent allegations of retaliation. Through this Acknowledgment, the Respondent also agrees to refrain from any retaliatory conduct against the Complainant or any witnesses in the matter

and may be responsible for any retaliation by persons affiliated with the Respondent (i.e. a friend or family member).

c.   Duty to Cooperate

The Respondent has an obligation to cooperate with the Title IX Team regarding this matter. Refusal or failure by the Respondent to meet and cooperate with the Title IX Team, investigators, or other Administrators involved in the matter or to sign the Limited Disclosure/Non-Retaliation Acknowledgement, as determined by the Senior Associate Dean of Students (or designee), may result in (1) removal of the Respondent as an interim measure and/or (2) the adjudication of the disciplinary complaint without input from the Respondent.

d.   Complaint Form

Once the Respondent has signed the Limited Disclosure/Non-Retaliation Agreement, the Title IX Team will provide the Respondent with a copy of the Complaint Form, discuss the nature of the complaint, explain the rights and responsibilities of the Respondent, explain the prohibition against retaliation, explain the Sexual Misconduct Adjudication Process, and give the Respondent a copy of the relevant policies.

e .   No Contact Order

Upon the initiation of a complaint under the Sexual Misconduct Adjudication Process, a No Contact Order will be put into place between the Complainant and Respondent. The No Contact Order will bar any communication or contact between the Complainant and Respondent and will prohibit any interaction or exchange between them, either directly or through others (e.g. friends, family members, attorneys, others, etc.). The Title IX Team will work with the Complainant and Respondent to facilitate the terms of the No Contact Order so that they may attend classes and use College facilities as appropriate. The goal of the No Contact Order is to allow both the Complainant and Respondent, to the extent possible, to continue their academic and social endeavors while still avoiding contact during the adjudication of the complaint. The No Contact Order can be as detailed as necessary, include specific plans of where the Complainant and Respondent can be at specific times. A No Contact Order can be kept in place after the conclusion of the Sexual Misconduct Adjudication Process. In cases where a demonstrated violation of the No Contact Order has been shown, the responsible party may be separated from the College pending the final resolution of the disciplinary complaint as an interim measure. The Complainant and/or Respondent may also be able to seek restraining orders or other orders of protection outside of the College, through the courts; the College will also endeavor, as possible, to enforce these orders of protection on campus. Information about obtaining these types of orders can be obtained from Campus Safety by calling 518-388-6911 or through local law enforcement.

f.   Options

Upon reviewing the Complaint Form, the Respondent has two (2) options for resolving the allegations.

(1) *Pre-Fact Finding Investigation Resolution of Complaint/Acceptance of Allegations*

After meeting with the Title IX Team and reviewing the Complaint Form, the Respondent has the right to end the Sexual Misconduct Adjudication Process by accepting responsibility for the conduct alleged in the Complaint Form. If the Respondent accepts responsibility for the conduct alleged in the Complaint Form, the process would not proceed to the Fact Finding Investigation phase. Instead, the matter would be referred to the Senior Associate Dean of Students to decide the appropriate disciplinary action against the Respondent.

The Senior Associate Dean of Students may take the Respondent's acceptance of responsibility into consideration in determining the appropriate sanction. Once the Respondent accepts responsibility, such acceptance cannot be withdrawn. A written finding of the acceptance of responsibility and the resulting disciplinary action will be issued by the Senior Associate Dean of Students, which will become part of the Respondent's student records and will be shared with the Complainant. If the Respondent does not wish to participate in this resolution process, then he/she will need to prepare a Respondent's Statement as noted below. The Respondent must decide whether he/she would like to utilize this resolution process before expiration of the **seven (7) days** for submitting the Respondent's Statement.

(2) *Respondent's Statement*

If the Respondent does not accept responsibility, they will be asked to provide a written response to the information contained in the Complaint Form. The Respondent's Statement must be submitted to the Title IX Coordinator within seven (7) days after the meeting with the Title IX Team. The Respondent's Statement should contain the Respondent's full recollection of the alleged incident. This statement is the Respondent's opportunity to respond to the allegations made by the Complainant. The statement should communicate the Respondent's recollection of the event and its context, as well as the Respondent's reflections by following these guidelines:

- Describe the event(s) in full detail. Relate in full the facts of the incident as you recall them. Take care to distinguish between what you saw, heard, or experienced first-hand from what you may have learned later from others.

- Describe the context. It is important for you to give your perception of the conduct and the context in which the alleged incident occurred, including its location, and any witnesses to it.

- Reflect on the event(s). It is helpful for you to provide any conclusions you have drawn about the incident, stating clearly why you believe your actions have not violated College policy or the Code of Conduct.

A descriptive list of all sources of information (e.g., witnesses, correspondence, records, etc.) should be attached to the Respondent's Statement. That list should include information which the Respondent believes should be considered in deciding the disciplinary complaint, along with a brief explanation of why this information would be relevant and helpful to the process. The sources and/or location of this supporting information should be identified. Respondents are advised to not attempt to obtain the information themselves. The Investigator(s) will solicit relevant statements or documents referenced through this process.

The Respondent's Statement will be one of the most important documents to be considered in the Sexual Misconduct Adjudication Process. Once submitted, the Respondent's Statement may not be amended, but it may be supplemented through interviews with the Investigator(s). The statement must be prepared by the Respondent. It is unacceptable for a Respondent to submit a statement written by others, including parents, support persons, or attorneys. However, the Respondent is encouraged to share a draft of the statement with a support person who is well positioned to discuss, among other matters, the statement's style, organization, length, and clarity, while also anticipating questions it may raise for the fact-finder. The Respondent will be required to sign a statement verifying that they authored the Respondent's Statement. Once the Respondent has submitted their statement, the Respondent will be given a copy of the Complainant's Statement.  The Complainant will also be given a copy of the Respondent's Statement.

*3.  Fact Finding Investigation*

After both parties have submitted their statements to the Title IX Coordinator, the Title IX Coordinator will initiate a Fact-Finding Investigation, utilizing the College's neutral investigators. It is the responsibility of the Investigator(s), not the parties, to gather the evidence relevant to the Complaint and the facts raised in the parties' statement, to the extent reasonably possible. During the course of the investigation, the Investigator(s) may utilize some or all of the following procedures, in whatever order the Investigator(s) deems most appropriate. The scope of the Fact Finding Investigation will not be limited to information provided by the parties or to the violations outlined in the disciplinary complaint. In all cases, the Investigator(s) will conduct an impartial investigation into the allegations of the disciplinary complaint, reviewing all evidence deemed to be relevant. Parties and witnesses will be requested to make themselves reasonably available to the Investigator(s). Refusal by a party or witness to cooperate with the Investigator(s) in the Fact Finding Investigation, as determined by the Senior Associate Dean of Students, may result in disciplinary action against the person refusing to cooperate. A refusal to cooperate does not preclude completion of the investigation.

a.   Document Review

Once statements have been submitted by the parties, the Investigator(s) will review the statements and all of the supporting material referenced. The Investigator(s) will then attempt to obtain any documents or other materials deemed relevant to the investigation. Any documents or information deemed to be material to the findings regarding the disciplinary complaint or any other violations will be disclosed to both parties for comment or rebuttal.

b.   Party Interviews

The Investigator(s) will interview the Complainant and the Respondent separately. This meeting is an opportunity for the participant to discuss his/her recollection of any event in question, supplement any written statements already submitted, voice any concerns, and work with the Investigator(s) to determine what information may be helpful in the investigation of the allegations. Parties may also discuss the impact that this experience has had on them. All of the materials provided to the Investigator(s) by either the Complainant or the Respondent will be disclosed to the other party in advance of their respective interviews, including the complete statement of the other party. The Investigator(s) may interview the parties more than once and as necessary. Both the Complainant and Respondent may have his/her Advisor (as defined hereinafter in this Policy) accompany them to the meetings between the Investigator(s) and the party being assisted by the Advisor, but such Advisor may not participate in the conversation. Prior to sitting in on any interviews, the Advisor will be required to sign a Limited Disclosure/Non-Retaliation Acknowledgment, agreeing to limit discussion of anything relating to the disciplinary complaint with anyone other than those involved with this process. At the conclusion of the interview, participants are permitted to make an optional closing statement.

c.   Witness Interviews

The Investigator(s) will attempt to contact and interview any witnesses identified by the parties that the Investigator(s) deems to be relevant to the resolution of the disciplinary complaint. The Investigator(s) may also interview any other persons they find to be potentially relevant to this matter. Witnesses may not bring Advisors to their interviews. Prior to being interviewed, a witness will be required to sign a Limited Disclosure/Non-Retaliation Acknowledgement, agreeing to limit disclosure of anything relating to the disciplinary complaint and their interview with anyone other than those involved within the process. Through this Acknowledgment, the witness will also agree to refrain from any retaliatory conduct against the parties or any witnesses in the matter and may be responsible for any retaliation by persons affiliated with them (i.e. a friend or family member). The Investigator(s) will employ best efforts to interview relevant witnesses who are no longer on campus or in the Schenectady area, attempting to contact them by phone or internet.

d.  <u>Expert Witnesses</u>

The Investigator(s) reserve the right to consult with any experts which the Investigator(s) deems helpful to the determination of the facts of this case. An expert witness could be consulted to review the allegations and information and provide a professional opinion or otherwise give input regarding information or evidence discovered in the Fact Finding Investigation.

e.  <u>Admissibility of Evidence</u>

The fact finding investigation process is intended to arrive at the truth of the matter without the formalities associated with rules and procedures specifically designed by lawyers to manage courtroom litigation. Students can address issues and present documents to the Investigator without concerns about admissibility. It should be noted that if the Investigator determines that the issues raised and/or documents presented are relevant and suggest whether the alleged conduct occurred then, in the interest of fairness, that information will be disclosed to the parties at or before the time the Investigative Report is made available for review by the parties.

(1) *Sexual History*

In general, a Complainant's prior sexual history is not relevant and will not be admitted as evidence at a hearing. Where there is a current or ongoing relationship between the Complainant and the Respondent, and the Respondent alleges consent, the prior sexual history between the parties may be relevant to assess the manner and nature of communications between the parties. As noted in other sections of this policy, however, the mere fact of a current or previous dating or sexual relationship, by itself, is not sufficient to constitute consent. Any prior sexual history of the Complainant with other individuals is typically not relevant and will not be permitted.

(2) *Medical and Counseling Records*

The use of medical and/or counseling records in the adjudication process is rare. Medical and counseling records are confidential documents that students will never be required to disclose in the process. Medical and counseling documents being privileged means that they cannot be shared with anyone other than the treating professional unless the patient agrees to disclosure. Students should be aware that there are legal implications to agreeing to produce privileged records. Because of this, students are encouraged to seek advice from a knowledgeable source about the possible consequences of releasing this information.

A Complainant or Respondent who, after due consideration, believes that his/her own medical or counseling records would be helpful in determining whether sexual misconduct occurred has several options for **voluntarily** presenting this information:

- The Complainant or Respondent can voluntarily decide to present their own medical or counseling records to the Investigator as part of the documents which they would like to have the fact finder consider in deciding the disciplinary complaint. Please note that if a party decides to produce such records, they must be produced in their entirety. The production of excerpts or selected documents is inappropriate and will not be considered.

- On occasion, the Investigator may ask the Complainant or Respondent to voluntarily agree to provide these records if the Investigator believes that such documentation exists and that it would be helpful in deciding the disciplinary complaint. A party is under **no obligation** to provide this information and may simply say "no" to this request. A party has a right to refuse to provide these records and that refusal is completely acceptable. Prior to responding to such a request, a party is encouraged to consult with their Advisor about the implications of agreeing or denying the request. Please note that if a party does decide to produce such records, they must be produced in their entirety. The production of excerpts or selected documents is inappropriate and will not be considered.

- The Investigator may ask a Complainant or Respondent to voluntarily provide a verification of therapeutic or medical services to confirm simply that such treatment occurred; however, the verification will not provide any details regarding that treatment.

On rare occasions, a person may be in possession of the medical and/or counseling records of another party or witness. Such records can only be presented to the Investigator under the following circumstances: (i) The person can show that the records are relevant to the pending disciplinary complaint; (ii) the person can document or otherwise prove that the records were legally obtained and may be disclosed to those not in possession of the records; and (iii) the records can be authenticated. Failure to meet any of these conditions means that the records will not be considered in the determination regarding sexual misconduct.

### 4. Investigative Report

Once the Fact Finding Investigation has been completed, the Investigator(s) will evaluate the information obtained during this process. The Investigator(s) will prepare a report summarizing and analyzing the relevant facts received through the Investigation, noting any supporting documentation or statements. The Investigator(s) will present the Investigation Report to the Senior Associate Dean of Students and the Title IX Coordinator for review. The Senior Associate Dean of Students/Director of Student Conduct and the Title IX Coordinator will review the investigative report, any witness statements and any other documentary evidence to determine whether the proffered information contained therein is relevant and material to the determination of

responsibility given the nature of the allegation. In general, the Senior Associate Dean of Students/Director of Student Conduct may redact information that is irrelevant, more prejudicial than probative, or immaterial. The Senior Associate Dean of Students/Director of Student Conduct may also redact statements of personal opinion, rather than direct observations or reasonable inferences from the facts, and statements as to general reputation for any character trait, including honesty. Neither the Complainant nor the Respondent shall have the right to review redactions from the Investigative Report.

Once the report is finalized, it will be provided to both the Complainant and the Respondent for review. The report may not contain information that has been redacted as determined by the Senior Associate Dean of Students and the Title IX Coordinator. The final report will be made available to the Sexual Misconduct Adjudication Panel. Under ordinary circumstances, the Investigative Report should be submitted to the Senior Associate Dean of Students and the Title IX Coordinator within fifteen (15) days after the completion of the Fact Finding Investigation.

*5. Document Review*

Both the Complainant and Respondent will be provided the opportunity to review the final investigative report. This document review will take place within the Dean of Students Office or in the Title IX Coordinator's Office – the documents and any evidence, either originals or copies, will not permitted to leave the office. The Complainant and the Respondent may bring their Advisor to this review.

Any requested changes or concerns must be submitted in writing to the Senior Associate Dean of Students by the respective parties within two (2) days of reviewing the document(s). The Complainant has the option, as outlined below, to withdraw the complaint within two (2) days of reviewing the final investigative report. Additionally, the Respondent has the option, as outlined below, to accept responsibility for the allegation(s) and the Senior Associate Dean of Students will decide the appropriate disciplinary action against the Respondent. The Senior Associate Dean of Students will notify both parties should there be any changes within two (2) days of receipt of written notification from either party. The Senior Associate Dean of Students, in consultation with the Title IX Coordinator, will provide a copy of the final investigative report to the Adjudication Panel.

  a.  Options

  Upon review of the final investigative report and before the final investigative report is provided to the Adjudication Panel, both the Complainant and Respondent have the option to:

    (1) *Respondent May Accept Responsibility*

    If the Respondent accepts responsibility for the conduct alleged in the Investigative Report, the process would not proceed to the Adjudication Panel. Instead, the matter would be referred to the Senior Associate Dean of Students

to decide the appropriate disciplinary action against the Respondent. Once the Respondent accepts responsibility, such acceptance cannot be withdrawn. A written decision will be provided by the Senior Associate Dean of Students to both parties. These documents will become part of the Respondent's student records in accordance with policy.

(2) *Respondent May Not Accept Responsibility*

If the Respondent does not accept responsibility for the conduct alleged in the Investigative Report, the Adjudication Panel will receive the final Investigative Report and the process will proceed as outlined below.

(3) *Complainant May Withdraw Complaint*

If the Complainant wishes to withdraw their complaint after reviewing the Investigative Report they may do so in writing within two (2) days of reviewing the document(s). Once a complaint has been withdrawn, it cannot be filed again by the Complainant within in this process. The College reserves the right to proceed with the disciplinary complaint as an Administrative Complaint, even after a Complainant withdraws it, at the request of the Respondent or in order to protect the interests and safety of the Union Community. If the College does not choose to move forward, the withdrawal of the complaint will, under most circumstances, end the Sexual Misconduct Adjudication Process for that complaint.

*6.  Notice of Charges*

The Senior Associate Dean of Students/Director of Student Conduct will send a copy of a written Notification Letter to both the Complainant and the Respondent. The Notification Letter provides each party with a brief summary of the conduct at issue and the specific provisions of the policy that are alleged to have been violated.

*7.  Notice of Adjudication*

Once each party has met with the Senior Associate Dean of Students/Director of Student Conduct and reviewed the documents related to the case, a Notice of Adjudication is sent to the Complainant and the Respondent. In addition, the Notice provides the parties with the date, time, and place of their respective meetings with the Panel, as well as the name(s) of the person(s) hearing the case. The Complainant and Respondent will be meet separately with the Panel.

In general, the Panel meetings will be scheduled within ten (10) days of the date of the Notice of Adjudication. Under extenuating circumstances, this time frame may be extended.

*8.  Panel Adjudication/Decision*

Upon determining that all the issues regarding the disciplinary complaint have been fully investigated and adequately addressed, the Title IX Coordinator and the Chair of the Adjudication Panel will select four (4) members to serve on the Panel.

The Adjudication Panel is typically composed of two (2) faculty or staff members, two (2) students, and the chair, a Senior Student Affairs Administrator. Each member, including the chair, will have an equal vote. A quorum of the Adjudication Panel shall consist of the chair, and two (2) panel members.

The Adjudication Panel will have the responsibility to determine (1) whether College policy has been violated and (2) what recommended disciplinary action should be imposed if Union College's Sexual Misconduct policy is found to have been violated.

The Adjudication Panel has been given the responsibility by the College Administration to adjudicate proscribed conduct. The Panel will adjudicate cases involving an alleged violation of the Sexual Misconduct Policy in accordance with the procedures set forth herein.

The parties are permitted to request that the Panel ask questions of the other party. These questions are to be submitted, in writing, in advance of the Pre-Decision Conference to the Title IX Coordinator. The Panel will determine the appropriateness of any question presented and may elect not to ask a question that is deemed irrelevant, is deemed to have already been addressed, or a question that is deemed inflammatory, derogatory, or degrading.

Upon receipt of the investigative report, the Adjudication Panel will meet and review the document. The Panel must review the Investigation Report containing all pertinent information regarding the incident in question. Prior to the Panel's adjudication of the case, the Panel Chair will schedule separate Pre-Decision Conferences with the Complainant and the Respondent. During the Pre-Decision Conferences, the Panel will provide the Complainant and Respondent each with an opportunity to comment on and respond to the information presented, ask and answer questions, and provide any additional information that should be considered prior to a final decision being rendered regarding the disciplinary complaint. The Complainant and Respondent may each provide a rebuttal statement, impact statement or narrative, or identify any new documents or information that may be relevant to the finding at the Pre-Decision Conference.

Present at the Pre-Decision Conference will be the Complainant and their advisor or the Respondent and their advisor as well as the Administrative Panel members, the Title IX Coordinator, and/or College counsel. College counsel may not be present during the Pre-Decision Conferences, however, the Panel Chair reserves the right to consult at any time.

Normally, within five (5) days of the Pre-Decision Conferences, the Complainant and Respondent will be afforded the opportunity to review the entire written transcript of the testimony offered by both parties before the Adjudication Panel. Any additional information, statements, or additional questions a party determines should be raised with the other party (based upon a review of the transcript) must be provided, in writing,

to the Title IX Coordinator within two (2) business days after receipt of the transcript. At no time are the Complainant and Respondent to contact any member of the Panel directly. All communication between the Complainant and Respondent and the Panel will be done through the Title IX Coordinator or a designee.

After meeting with the Complainant and Respondent and reviewing any additional information and/or narratives submitted for consideration, the Adjudication Panel may determine that additional inquiry is needed in order for a decision to be rendered regarding the disciplinary complaint. If so, the Adjudication Panel Chair will ask the Title IX Coordinator to initiate a supplemental fact-finding investigation into the areas of concern. The investigator will focus any additional investigation on the specific inquiries posed by the Adjudication Panel. The investigator will then prepare and submit a Supplemental Investigation Report addressing the findings as to the issues raised by the Panel. If the supplemental fact-finding investigation causes the process to exceed the 60 day timeframe, the Title IX Coordinator will advise the Complainant and Respondent in writing of the delay and offer an explanation of a timeline. The Panel Chair reserves the right to schedule subsequent, separate Pre-Decision Conferences to address the findings from the supplemental investigation or any additional questions requested by either party with the Complainant and Respondent, should the Panel feel, at its discretion, that such a meeting would be helpful to the process.

The Panel Adjudication process is intended to provide a fair and ample opportunity for each side to represent his/her account of the incident and for the Panel to determine whether College policy was violated and to recommend appropriate sanctions, if necessary. The Panel is a formal proceeding not comparable to a criminal or civil process; it is the mechanism by which the College assesses, and as appropriate, takes formal disciplinary action regarding a violation of College policy.

There will be a single transcript made of the meetings which shall be the sole property of the Dean of Students Office. The transcript will be provided to for review to the Complainant and Respondent in connection with the Pre-Decision Conference Hearings in order to raise additional questions for the Panel to ask the other party, to be provided to the Title IX Coordinator in writing according to procedures set forth herein, and/or in connection with an appeal. The transcription will be maintained for a period of four (4) months from the date the appeal period has lapsed or until an appeal decision has been rendered, whichever is later.

a.   Advisors

An advisor is any individual selected by the Complainant or Respondent, including retained legal counsel. If the Complainant or Respondent elects to have an advisor attend, the advisor is permitted, subject to restrictions, to attend the sessions with the investigators, meetings with the Title IX Coordinator, meetings with the Senior Associate Dean of Student/Director of Student Conduct, meetings with Dean of Students Office, and/or appearances before the Adjudication Panel. The advisor is permitted to provide the Complainant or Respondent advice during these meetings at appropriate times when the student being advised is not answering questions. The

advisor is not allowed to argue for, advocate for, or present the case for the Respondent or Complainant or directly address the investigators, the Senior Associate Dean of Student/Director of Student Conduct, Dean or Students or designee, or Panel. The College reserves the right to remove or dismiss advisors from meetings who become disruptive, who do not abide by the restrictions set forth herein, or who intentionally delay the investigation or adjudication process.

Advisors who wish to communicate about the case may contact the Senior Associate Dean of Students/Director of Student Conduct or the Title IX Coordinator after signing the Limited Disclosure/Non-Retaliation Acknowledgement.

b.   Prior Sexual History

In general, a Complainant's prior sexual history is not relevant and will not be admitted as evidence. Where there is a current or ongoing relationship between the Complainant and the Respondent, and the Respondent alleges consent, the prior sexual history between the parties may be relevant to assess the manner and nature of communications between the parties. As noted in other sections of this Policy, however, the mere fact of a current or previous dating or sexual relationship, by itself, is not sufficient to constitute consent. Any prior sexual history of the Complainant with other individuals is typically not relevant and will not be permitted.

c.   Request to Reschedule Panel Meeting

Either party can request to have an Adjudication Panel meeting rescheduled. Absent extenuating circumstances, requests to reschedule must be submitted to the Senior Associate Dean of Students/Director of Student Conduct with an explanation for his or her request at least three (3) business days prior to the scheduled meeting. The Senior Associate Dean of Students/Director of Student Conduct will have sole discretion to grant or deny any request to reschedule a Panel Meeting.

d.   Consolidation of Adjudication Proceedings

At the discretion of the Senior Associate Dean of Students/Director of Student Conduct, in consultation with the Title IX Coordinator, multiple reports may be consolidated against a Respondent into one Adjudication Panel meeting, if the evidence related to each incident would be relevant and probative in reaching a determination on the other incident. Matters that include related conduct that would regularly have been heard under the Code of Student Conduct may be consolidated even if they involve multiple Complainants and/or multiple Respondents.

e.   Attendance at Adjudication Panel Meeting

When a party fails to attend the Panel meeting without a reason that the Senior Associate Dean of Students/Director of Student Conduct finds compelling, the

meeting may be held in their absence at the discretion of the Senior Associate Dean of Students/Director of Student Conduct.

Once the investigation has commenced, a Respondent will not be permitted to withdraw from the College to prevent proceeding with the case. If a Respondent chooses not to participate, the College may move forward with the hearing and imposition of sanction, if any, in absentia. The Respondent's academic transcript will be marked Withdrawal Pending Disciplinary Action, or, if finally resolved in absentia, with the final outcome in accordance with regular practice under this Policy.

f.   Participants in Adjudication Panel Procedures

The Adjudication Panel process is a closed meeting; it is not open to the public. The individuals who may appear before the Panel are: the Complainant; the Respondent; any individual serving as an approved Advisor; and the Title IX Coordinator.

g.   Safeguarding of Privacy

All parties involved are required to keep the information learned in preparation for the Panel adjudication private. No copies of documents provided are to be made or shared with any third parties other than a party's Advisor. All copies provided must be returned to the College at the conclusion of the hearing and any appeals. Any breach of this duty is subject to further disciplinary action by the College.

h.   Deliberation

After the Complainant and Respondent have met with the Adjudication Panel, the panel members will conduct their deliberations in private. The Panel will normally complete their deliberations within five (5) days, but every attempt will be made to complete the deliberations promptly.

The Panel will determine a Respondent's responsibility by a preponderance of the evidence. This means that the Judicial Board will decide whether it is "more likely than not," based upon all of the relevant information, that the Respondent is responsible for the alleged violation(s). The Panel must reach a decision on responsibility by majority vote.

If the Panel finds the Respondent responsible, the Panel will then recommend appropriate sanctions to the Senior Associate Dean of Students/Director of Student Conduct. The Panel will be able to review the impact statements from either party prior to making their recommendations to Senior Associate Dean of Students/Director of Student Conduct. The Senior Associate Dean of Students/Director of Student Conduct will review the recommendations and impose an appropriate sanction.

The findings of the Panel will be submitted to the Senior Associate Dean of Students/Director of Student Conduct in writing. The findings will detail the findings of fact and the basis/rationale for the decision of the Panel, making reference to the evidence that led to the finding.

9. *Sanctions*

A Panel that finds a Respondent responsible for a violation of this Policy will recommend appropriate sanctions that may include, but are not limited to, those set forth below. Sanctions may be issued individually or a combination of sanctions may be imposed.

New York State law requires that any student determined to have committed sexual assault may receive a sanction ranging from suspension to expulsion. A student returning from suspension will return on probation, with 8 points.

Any student who is determined to have committed non-consensual sexual contact or any other prohibited form of conduct may receive 2-10 points and a sanction ranging from a conduct warning to suspension or expulsion.

The Senior Associate Dean of Students/Director of Student Conduct may deviate from the range of recommended sanctions, based upon a full consideration of the following factors:

- The Respondent's prior discipline history;

- How the College has sanctioned similar incidents in the past;

- The nature and violence of the conduct at issue;

- The impact of the conduct on the Complainant;

- The impact of the conduct on the community, its members, or its property;

- Whether the Respondent has accepted responsibility for his/her actions;

- Whether the Respondent is reasonably likely to engage in the conduct in the future;

- The need to deter similar conduct by others; and

- Any other mitigating or aggravating circumstances, including the College's values.

In appropriate cases, a Panel may determine that the conduct was motivated by bias, insofar as a Complainant was selected on the basis of his or her race, color, ethnicity, national origin, religion, age, disability or other protected class as defined in federal and/or state laws. Where the Panel determines that student misconduct was motivated by bias, the panel may elect to recommend an increase in the sanction imposed as a result of this motivation.

The Panel will make a recommendation about the appropriate sanction(s). The Senior Associate Dean of Students/Director of Student Conduct may affirm or modify the recommended sanction(s).

Upon a finding of proscribed conduct, points ranging from 0-10, accompanied by sanctions including but not limited to those listed below, may be imposed.

- *Educational Programs*

Requirement that the Respondent take part in a required educational program on or off campus. The Judicial Board may require Respondent to participate in an online educational program that addresses particular issues.

- *Expulsion*

Permanent separation from the College including loss of student status; reinstatement or readmission is not possible.

- *Interim Restrictions*

Imposition on an interim basis of any sanction or sanctions listed in this section.

- *Loss of Privileges*

Denial of specified privileges for a designated period of time. These may include loss of housing privileges, inability to participate in term abroad programs or other programming and activities offered by the College.

- *Physical Restrictions*

A directive given to the Respondent that does not permit him/her/them to be in specified locations on College Premises.

- *Probation*

The next violation is likely to result in Suspension or Expulsion.

- *Residence Reassignment*

Relocation to another living space on campus.

- *Residence Termination*

Removal from campus housing.

- *Suspension*

Separation from the College community for a defined period of time, usually no fewer than two (2) Academic Terms. Additional stipulations or conditions for reinstatement may be assigned. Reinstatement is contingent upon a positive administrative review. A student under suspension is not allowed to transfer in credit for courses taken at other institutions during the defined period of time of the suspension.

- *Suspension with Academic Delay*

The student will be suspended from the College, but the commencement of the suspension will be deferred and the student will be permitted to remain enrolled in classes until the end of the term. However, if the student fails to comply with any interim restriction which may be imposed during the deferral period (e.g., fails to comply with a "no contact" order), violates the Student Conduct Code while in the deferral period and is found responsible, or fails to complete the assigned sanctions by the given deadline(s), the student will be immediately suspended. During the deferral period, the student is not considered to be in good standing with the College and may not represent the College on any athletic team other than intramurals, hold an office in any student organization registered with the College, represent the College in any extracurricular activity or official function, or participate in any study abroad program.

- *Withholding the Granting of a Degree or Revocation of a Degree*

Action by the College to revoke a student's degree or to withhold it for a specified amount of time.

More than one of the sanctions listed above may be imposed for any single violation.

## 10. Outcome Letter

The outcome of the Adjudication Panel will be final and communicated to the Complainant and Respondent in writing, usually within seven (7) days from the date the process is concluded. The notification of each party should occur at or near the same time.

Both parties have the right to be informed of the findings of fact, decision, rationale for the decision, and sanction (if any), in accordance with applicable law.

The imposition of sanctions will take effect immediately and will not be stayed pending the resolution of the appeal.

The College reserves the right to notify parents/guardians of dependent students regarding the outcome, in accordance with the College's FERPA Policy. The College will notify the Title IX Coordinator of the outcome and also reserves the right to designate which College officials have a need to know about individual conduct complaints pursuant to FERPA requirements.

## 11. Appeals

Both the Complainant and Respondent are entitled to appeal a Panel's decision issued through the Sexual Misconduct Adjudication Process. The Complainant and Respondent are both entitled to only one appeal. The person filing the appeal is called the appellant. An appeal must be filed, in writing, and provided to the Title IX Coordinator using the Notice of Appeal form within **seven (7) days** of the notice of

decision. The Notice of Appeal form can be obtained by emailing: kelleym2@union.edu or it may be accessed from http://www.union.edu/titleix.

The Notice of Appeal should be submitted to:

**Melissa Kelley**
**Title IX Coordinator**
**Reamer 403E**
**Kelleym2@union.edu**

The point of an appeal is not to provide Complainant and/or Respondent with a new adjudication process nor is it intended to provide Complainant and/or Respondent with the opportunity to simply declare that the Panel's decision was wrong. The Complainant and Respondent may appeal the decision of the Panel based only upon the grounds outlined below with respect to the each of the violation(s) found to have occurred. Appeals are heard by an Appeals Panel, overseen and appointed by the Title IX Coordinator, and is comprised of three (3) impartial, trained persons: a senior administrator appointed by the President or his/her designee, who acts as the chair of the Panel, and two trained panel members, who are part of the Adjudication Panel pool of members and were not part of the original decision making process. The imposition of sanctions remain in effect during the period of the appeal proceedings. The opposing party will be notified that an appeal has been filed and will receive a copy of the Notice of Appeal. The opposing party has **two (2) days** to respond to the appeal in writing. This response should be submitted to the Title IX Coordinator and will be reviewed by the appellate panel. In some situations, both the Complainant and the Respondent may file an appeal. In this situation, the appellant panel will consider and review both appeals together.

In considering the appeal, the appellate panel will be given the Notice of Appeal form, any and all documents provided at the Pre-Decision Conferences, including but not limited to the statements from the Complainant and Respondent, the investigative report, the supplemental investigative report (if any), and any other documentation provided to the Panel at the time they made their decision. The appellate panel will receive the Adjudication Panel's outcome letter as well as the Senior Associate Dean of Student's letter outlining the sanction and rationale. Additionally, the appellate panel will receive any response received from the opposing party by the Title IX Coordinator within the allotted two (2) day timeframe. The appellant panel may consult with the Panel Chair regarding questions of process and with the Senior Associate Dean of Students/Director of Student Conduct regarding questions of appropriateness of the sanction(s).

Appeals shall be submitted based on the student's ability to demonstrate that one or more of the grounds listed below for appeal are meritorious:

- *Procedural Error*: The Appellant alleges that there was a deviation or change from the procedures outlined in the Sexual Misconduct Adjudication Process and that deviation had an adverse impact on the outcome of the complaint against the appellant. If the appellate panel determines that there was a procedural error which

would have altered the outcome of the case, the appeal will be submitted to the original decision making panel for a determination regarding the impact of the procedural error on the outcome of the complaint.

- *New Information*: The Appellant alleges that, subsequent to the issuing of the Panel's decision, new information became available which would have impacted the outcome of the disciplinary complaint. The Appellant must: (i) present the new information; (ii) show why it was unavailable prior to the Panel's decision; and (iii) show that the new information would have altered the outcome of the complaint. If the appellate panel determines that there is new information that meets these three (3) requirements, the appeal will be submitted to the original Panel for review in light of new information. At the original Panel's discretion, additional investigation of the new information can be requested.

- *Severity of The Disciplinary Action*: The Appellant alleges that the disciplinary action issued by the Senior Associate Dean of Students/Director of Student Conduct is unduly harsh or lenient. If the Appeals Panel determines that that disciplinary action was unduly harsh or lenient, it will remand the matter to the Senior Associate Dean of Students/Director of Student Conduct for reconsideration. The decision of the Senior Associate Dean of Students/Director of Student Conduct after reconsideration is final.

The foregoing are the only grounds for appeal.

The appeals process will usually be completed within **fifteen (15) days** of filing the Notice of Appeal. In the event that the appeals process exceeds the fifteen (15) day time frame, the Title IX Coordinator will advise all parties in writing of the delay and offer an explanation.

A written decision will be rendered by the Chief of Staff or designee and will be provided to each party by either being mailed to the parties at their local addresses (or another address if a student has no local address) or emailed to the parties at the email addresses that the College has provided the students (or another email address a student has provided the College). The outcome of the appeal is final.

*12. Concerns about the Implementation of these Grievance Procedures*

The College has appointed Melissa Kelley as the Title IX Coordinator to oversee all aspects of the College's Title IX compliance efforts. An individual who believes that any aspect of this policy has not been properly followed should contact the Title IX Coordinator at 518.388.6865 or kelleym2@union.edu. Retaliation against any person who files a complaint of alleged discrimination is prohibited.

### 13. Integrity of Process

These procedures are entirely administrative in nature and are not considered legal proceedings. As there will be an official recording of the hearing, neither party may make an audio or video recording of the proceedings. No computers, cell phones, or other electronic means of communication are allowed to be used by the Complainant, Respondent, advisors, or a witness.

### 14. Conclusion of Case

At the conclusion of the Sexual Misconduct Adjudication Process, all materials created by or reviewed by the Panel(s) will be retained by the Title IX Coordinator and/or the Dean of Students Office. Regardless of whether the matter is resolved by means of Title IX assessment, informal resolution or formal resolution. Complaints resolved by means of Title IX assessment or informal resolution are not part of a student's conduct file or academic record.

Affirmative findings of responsibility in matters resolved through Panel adjudication are part of a student's conduct record. Such records shall be used in reviewing any further conduct, or developing sanctions, and shall remain a part of a student's conduct record.

For crimes of violence, including, but not limited to sexual violence, defined as crimes that meet the reporting requirements pursuant to the Clery Act, Union College shall make a notation on the transcript of students found responsible after a conduct process that they were "suspended after a finding of responsibility for a code of conduct violation" or "expelled after a finding of responsibility for a code of conduct violation." For the Respondent who withdraws from the institution while such conduct charges are pending, and declines to complete the disciplinary process, institutions shall make a notation on the transcript of such students that they "withdrew with conduct charges pending."

An appeal in writing may be submitted to the Dean of Students seeking removal of a transcript notation for a suspension, provided that such notation shall not be removed prior to one year after conclusion of the suspension. While notations for expulsion shall not be removed, if a finding of responsibility is vacated for any reason, any such transcript notation shall be removed.

The conduct files of all students, including those who have been suspended or expelled from the College, are maintained in the Title IX Coordinator and Dean of Students Office for no fewer than **seven (7) years** from the date of the incident.

Further questions about record retention should be directed to the Title IX Coordinator or the Dean of Students Office.



APPENDIX B
RESOLUTION OF A COMPLAINT AGAINST
A FACULTY MEMBER

**XII.   Appendix B: Resolution of a Complaint Against a Faculty Member**

Based on federal law, specifically Title IX and the Violence Against Women Act (VAWA), accompanying federal regulations, and guidance issued by the U.S. Departments of Education and Justice, and Article 129-B of the New York State Education Law, the following procedures apply in cases where a formal complaint of a violation of the College's Sexual Misconduct Policy has been interposed against a Faculty member (available at: http://www.union.edu/titleix). These procedures supersede those described in the Union College's Procedures for Dismissal and Sanctions found in the Faculty Manual.

Union College will investigate reports of Sexual Misconduct to the extent appropriate and possible. Investigation and resolution of all reports made under this Policy will be conducted in a prompt and equitable manner by individuals who have received appropriate training. Resolution will typically be completed within **60 days**. This time frame may be extended at the sole discretion of the Title IX Coordinator.

The complainant and respondent are entitled to rights set forth under the Bill of Rights section of the Sexual Misconduct Policy.

### A.  Advisors

An Advisor is any individual selected by the complainant or respondent, including retained legal counsel. If the complainant or respondent elects to have an Advisor attend, the Advisor is permitted, subject to restrictions, to attend the sessions with the Investigators, meetings with the Dean of Academic Departments and Programs and Title IX Coordinator to discuss Informal Resolution, attend conduct conference, and/or appearances before a Faculty Hearing Board as defined above. The Advisor is permitted to provide the complainant or respondent advice during these meetings at appropriate times when the person being advised is not giving testimony or answering questions. The Advisor is not allowed to argue for, advocate for, or present the case for the respondent or complainant or directly address the Investigators, the Dean of Academic Departments and Programs, Title IX Coordinator, or Faculty Hearing Board. The College reserves the right to remove or dismiss Advisors from meetings who become disruptive, who do not abide by the restrictions set forth herein, or who intentionally delay the investigation or adjudication process.

### B.  Faculty Hearing Board

The Faculty Hearing Board shall consist of the members of the Faculty Executive Committee (FEC) except for the Chair and Secretary of the FEC.

Faculty Hearing Board members (as defined above) are required to keep the information learned in preparation for the hearing and at the hearing confidential. No copies of documents provided are to be made or shared with any third parties. All copies provided must be returned to the Title IX Coordinator, or deleted if provided in electronic form, at

the conclusion of the hearing or, if applicable, the appeal. The Title IX Coordinator will advise when materials are to be returned or deleted.

The Faculty Hearing Board may consult with College Counsel at any time; however, if the complaint is brought administratively (that is, the College is the complainant, see Administrative or Dean's Complaint below), the Faculty Hearing Board may consult with outside counsel.

### C. Informal Resolution

Either the complainant or respondent may request the opportunity to pursue an informal resolution by providing written notice to the Dean of Academic Departments and Programs and the Title IX Coordinator. Participation of both the complainant and respondent in informal resolution is voluntary. The goal of informal resolution is to provide a forum where the complainant and respondent can, with the aid of the Dean of Academic Departments and Programs and the Title IX Coordinator or designee, come to a mutually agreed upon resolution. If a mutually agreed upon resolution is not reached or either party chooses not to engage in informal resolution, either of the parties may invoke the formal resolution process. If a mutually agreed upon resolution is reached, the Title IX Coordinator or Dean of Academic Departments and Programs, will notify the complainant and respondent in writing of the outcome. All records will be forwarded to the Vice President for Academic Affairs with a copy to the Title IX Coordinator.

Informal resolution may not be used to resolve allegations of sexual assault regardless of the identity of the complainant.

### D. Formal Resolution

Either the complainant or respondent may invoke the formal resolution process by providing written notification to the Title IX Coordinator. The College may also, either before or after conducting an investigation, independently invoke the formal resolution process pursuant to an Administrative or Dean's Complaint wherein the College will act as the complainant in the adjudication of a sexual misconduct complaint against a Faculty member. Such complaints will proceed under the processes outlined in this policy and may result in disciplinary action.

#### 1. Formal Complaint

To initiate a formal complaint, the complainant must submit two forms (Complaint Form and Complainant Statement) to the Title IX Coordinator. The Complaint Form contains:

- The name of the respondent, if known;

- A description of the alleged sexual misconduct; and

- The date, approximate time, and location of the alleged violation, if known.

The Complainant Statement should communicate the complainant's full account of the event and its context and must be written by complainant. If a complaint is submitted to the Title IX Coordinator, the Vice President of Academic Affairs will receive a copy of the complaint.

The Title IX Coordinator will provide the complainant with a copy of this Policy, the Complaint Form, and Complainant Statement (found on the Title IX website); review procedures; and inform the complainant of available resources, support services, and options, including the option to be assisted by an Adviser of his/her choice.

The Title IX Coordinator will meet with, or notify, the Dean of Academic Departments and Programs.

*2. Limited Disclosure/ Non-Retaliation Acknowledgment-The Parties*

Both parties and Advisors, when meeting with the Title IX Coordinator, will be required to sign a Limited Disclosure/Non-Retaliation Acknowledgment, agreeing to limit disclosure of  or discussions about anything relating to the disciplinary complaint with anyone other than those involved with this process. Both parties and Advisors will still be able to discuss the facts underlying the subject of the disciplinary complaint with attorneys, counselors, clergy, physicians, other therapeutic professionals and family. Both parties and Advisors should refrain from discussing the disciplinary complaint itself and/or the adjudication process with anyone affiliated with Union College. This is to preserve the integrity of the investigative process and also to prevent allegations of retaliation. Through this Acknowledgment, both parties and Advisors also agree to refrain from any retaliatory conduct against the other party or any witnesses in the matter and may be responsible for any retaliation by persons affiliated with the party (i.e. a friend or family member).

*3. Responding To a Formal Complaint*

The Title IX Coordinator and the Dean of Academic Departments and Programs will meet with the respondent to notify the respondent that a complaint has been filed and will be investigated. The Title IX Coordinator will provide the respondent with the Complaint Form and a copy of this Policy, review procedures, and inform the respondent of available resources, support services, and options, including the option to be assisted by an Adviser of his/her choice.

*4. Respondent Statement*

The respondent will be asked to provide a written response to the information contained in the complaint using the Respondent Statement form provided by the Title IX Coordinator (found on the Title IX website). The Respondent Statement must be submitted to the Title IX Coordinator and the Dean of Academic Departments and Programs within seven (7) days after the meeting between the respondent and the Title IX Coordinator. The Respondent Statement will be given to the complainant. At that time, respondent will be given a copy of the Complainant Statement.

### 5. Pre-Fact-Finding Resolution of Complaint/Acceptance

After meeting with the Title IX Coordinator and the Dean of Academic Departments and Programs and reviewing the complaint, the respondent has the right to end the Sexual Misconduct Adjudication Process by signing a document accepting responsibility for the conduct alleged in the complaint and forwarding the same to the Title IX Coordinator or the Dean of Academic Departments and Programs. The complainant will be notified in writing by the Title IX Coordinator and will have the opportunity to submit an impact statement to the Title IX Coordinator to be submitted to Faculty Hearing Board upon being convened. Once the respondent accepts responsibility, such acceptance cannot be withdrawn. If the respondent accepts responsibility for the conduct alleged in the complaint, the process would not proceed to the Fact Finding Investigation phase. Instead, the matter would be referred to the Faculty Hearing Board, convened by the Vice President for Academic Affairs, to decide the issue of the appropriate disciplinary action against the respondent.

The Faculty Hearing Board may take the respondent's acceptance of responsibility into consideration in recommending the appropriate sanction to the Vice President for Academic Affairs. A written finding of the acceptance of responsibility and the sanction(s) will be issued by the Vice President for Academic Affairs, which will become part of the respondent's employment records and the outcome will be shared with the complainant. All records will be forwarded to the Vice President for Academic Affairs with a copy to the Title IX Coordinator.

If the respondent does not wish to participate in this resolution process, then he/she will need to prepare a Respondent's Statement as noted below. The respondent must decide whether he/she would like to utilize this resolution process before expiration of the seven (7) days for submitting the Respondent's Statement.

### 6. Administrative Determination

If the Vice President for Academic Affairs determines that a finding of responsibility on the facts as alleged would likely result in a minor sanction, the Vice President for Academic Affairs will thereafter conduct whatever additional investigation the Vice President for Academic Affairs deems appropriate in order to reach a final disposition. (If at any point the Vice President for Academic Affairs determines that a severe sanction is likely, the Vice President for Academic Affairs will convene the Faculty Hearing Board. For purposes of this Policy, a minor sanction is that which does not impair essential professional duties, such as a letter of reprimand or a financial penalty less than the lesser of $1,000 or 1% of the annual salary in a one-year period.

If the Vice President for Academic Affairs determines by a preponderance of the evidence that the respondent is responsible for a violation of this Policy, the Vice President for Academic Affairs will issue the appropriate sanction.

The Vice President for Academic Affairs will communicate the outcome in writing to both parties (with a copy to the Title IX Coordinator) to the extent that it is required under federal law.

*7. Investigative Report*

If the Vice President for Academic Affairs determines that a finding of responsibility on the facts as alleged would likely result in a severe sanction, will proceed before the Faculty Hearing Board. First, however, the Vice President for Academic Affairs will consult with the Chair and Secretary of the Faculty Executive Council and the Title IX Coordinator to determine whether, in their opinion, such a hearing is appropriate (without this opinion being binding upon the Vice President for Academic Affairs). Before the convening of the Faculty Hearing Board, a formal investigation will be completed. The Investigator(s), with input from the Title IX Coordinator and Dean of Academic Departments and Programs, will conduct an investigation and prepare an investigative report, which may be accompanied by supporting documentation or items (for example, statements, photographs, etc.).

*8. Information*

Information relevant to the alleged violation(s) or defenses thereto may be presented at the hearing. Statements concerning a party's character do not constitute relevant information to be presented.

*9. Prior Sexual History*

In general, a complainant's prior sexual history is not relevant and will not be admitted as evidence at a hearing. Where there is a current or ongoing relationship between the complainant and the respondent, and the respondent alleges consent, the prior sexual history between the parties may be relevant to assess the manner and nature of communications between the parties. As noted in other sections of this Policy, however, the mere fact of a current or previous dating or sexual relationship, by itself, is not sufficient to constitute consent. Any prior sexual history of the complainant with other individuals is typically not relevant and will not be permitted.

*10. Medical and Counseling Records.*

The use of medical and/or counseling records in the adjudication process is rare. Medical and counseling records are confidential documents that the complainant will never be required to disclose in the process. Medical and counseling documents being privileged means that they cannot be shared with anyone other than the treating professional unless the patient agrees to disclosure. The parties should be aware that there are legal implications to agreeing to produce privileged records. The parties are encouraged to seek advice from a knowledgeable source about the possible consequences of releasing this information.

A complainant or respondent who, after due consideration, believes that his/her own medical or counseling records would be helpful in determining whether sexual misconduct occurred has several options for voluntarily presenting this information:

- The complainant or respondent can voluntarily decide to present their own medical or counseling records to the Investigator(s) as part of the documents which they

would like to have the fact finder consider in deciding the disciplinary complaint. Please note that if a party decides to produce such records, they must be produced in their entirety. The production of excerpts or selected documents is inappropriate and will not be considered.

- On occasion, the Investigator(s) may ask the complainant or respondent to voluntarily agree to provide these records if the Investigator(s) believes that such documentation exists and that it would be helpful in deciding the disciplinary complaint. A party is under no obligation to provide this information and may simply say "no" to this request. A party has a right to refuse to provide these records and that refusal is completely acceptable. Prior to responding to such a request, a party is encouraged to consult with their Advisor about the implications of agreeing or denying the request. Please note that if a party does decide to produce such records, they must be produced in their entirety. The production of excerpts or selected documents is inappropriate and will not be considered.

- The Investigator(s) may ask a complainant or respondent to voluntarily provide a verification of therapeutic or medical services to confirm simply that such treatment occurred; however, the verification will not provide any details regarding that treatment.

On rare occasions, a person may be in possession of the medical and/or counseling records of another party or witness. Such records can only be presented to the Investigator(s) under the following circumstances: (i) The person can show that the records are relevant to the pending disciplinary complaint; (ii) the person can document or otherwise prove that the records were legally obtained and may be disclosed to those not in possession of the records; and (iii) the records can be authenticated. Failure to meet any of these conditions means that the records will not be considered in the determination regarding sexual misconduct.

The Investigator(s) will share a draft of the investigative report with the Title IX Coordinator and Dean of Academic Departments and Programs who will then meet with the Investigator(s) to address any issues they have identified, including redaction of irrelevant information or the need to conduct additional investigation. Once these issues have been addressed the Investigator(s) will share a final copy of the investigative report with the Title IX Coordinator and the Dean of Academic Departments and Programs. The Title IX Coordinator and the Dean of Academic Departments and Programs will request that the Vice President for Academic Affairs convene the Faculty Hearing Board.

### E. *Disciplinary Proceedings-Formal Hearing*

The Title IX Coordinator will inform the parties in writing of the date, time and place of a hearing, the alleged violations that will be presented in the hearing, and the names of those who are serving as the Faculty Hearing Board.

### 1. Faculty Hearing Board Members

Each party shall have an opportunity to challenge the Faculty Hearing Board members for bias or conflict of interest. The challenge must be rooted in a specific bias or conflict of interest (e.g., the proposed the Faculty Hearing Board member is someone with whom a party has had a previous documented conflict or relationship that would create bias) rather than a general objection or an objection based upon a protected characteristic (race, religion, gender, etc.). A challenge must be made in writing to the Vice President for Academic Affairs within two (2) days of notification of the composition of the Faculty Hearing Board. The Vice President for Academic Affairs shall determine whether a Faculty Hearing Board member will be removed for possible bias or conflict of interest.

If a Faculty member wishes to recuse him-/herself, he/she may consult with the Vice President for Academic Affairs who will determine if recusal is appropriate. If a member of the Faculty Hearing Board is recused, the Vice President for Academic Affairs shall appoint a replacement.

### 2. Prior to Formal Hearing

The Faculty Hearing Board will review the Investigative Report with the Dean of Academic Departments and Programs and the Title IX Coordinator and will determine which witnesses, documentation, and other information will be called or presented at the hearing. No later than five (5) days prior to the hearing, the Title IX Coordinator will provide the parties with a copy of the Investigative Report, the list of witnesses, and any other information that will be presented at the hearing.

No later than three (3) days prior to the hearing, the parties may request that additional witnesses, supporting documentation, or other information be presented at the hearing. The request must be in writing, submitted to the Title IX Coordinator, and include a brief description of why the information is relevant to the determination of responsibility. The parties may not introduce witnesses, documentation, or other information at the hearing that were not provided to the Title IX Coordinator by this deadline. Exceptions may be made at the sole discretion of the Faculty Hearing Board if the identity of the witness or the documentation or other information was not available to the Party as of this deadline or for other extenuating circumstances.

The Title IX Coordinator has sole discretion to alter the time frames provided in this Policy for good cause and with written notice of the delay and reason for delay to be reasonably provided to the parties.

Prior to the hearing, the Title IX Coordinator and Dean of Academic Department and Programs will offer to meet with each party to review hearing procedures, the alleged violation(s), and the list of witnesses and other information that will be presented at the hearing. At this meeting, a party may request alternative testimony options that would not require physical proximity of the other party. Any proposed alternative must be reviewed in advance of the hearing to ensure that it is consistent with the goals of a fair and equitable process. While these options are intended to help make the complainant

or respondent more comfortable, they are not intended to work to the disadvantage of the other party.

The Title IX Coordinator will forward a copy of the alleged violation(s), the Investigative Report, the final list of witnesses, and any other information that will be presented at the hearing to the Faculty Hearing Board in advance of the hearing.

*3.  Statements Relevant to Sanctioning*

On or before the day of the hearing, the respondent may submit a written statement relevant to sanctioning and the complainant may submit a written impact statement for consideration by the Faculty Hearing Board. The statement must be provided to the Title IX Coordinator in a sealed envelope. The statements will be read by the Faculty Hearing Board only if it has found the respondent responsible. If the Faculty Hearing Board does not find the respondent responsible, the envelopes will be destroyed, unopened, by the Title IX Coordinator.

*4.  Faculty Hearing Board Procedures*

The Faculty Hearing Board is a closed hearing. It is not open to the public. The individuals who may appear before the Faculty Hearing Board are the Title IX Coordinator, Investigator(s), and any individuals appearing as witnesses. College Counsel may be consulted during the hearing. Before and after giving testimony, witnesses may be excluded from the room or building where the hearing occurs.

A hearing is not intended to be adversarial. It is intended to provide a fair and ample opportunity for each side to present his/her account of the incident and for the Faculty Hearing Board to determine the facts of the case, make a determination as to whether College policy was violated, and to recommend appropriate sanctions, if necessary. The hearing is an informal proceeding not comparable to a criminal or civil trial; it is the mechanism by which the College assesses a charged violation, and as appropriate, takes formal disciplinary action regarding a violation of College policy.

All parties involved in a hearing are required to keep the information learned in preparation for the hearing and at the hearing private. No copies of documents provided are to be made or shared with any third parties. All copies provided must be returned to the College at the conclusion of the hearing and any appeals. Any breach of this duty is subject to further disciplinary action by the College.

Notes may be taken by the participants in the hearing solely for their personal use. There will be a single verbatim recording or transcription made of the hearing which shall be the sole property of the office of the Vice President for Academic Affairs. The recording or transcript will be available only for review by the complainant, respondent or the College in the office of the Vice President for Academic Affairs for the purpose of review in connection with an appeal.

The Faculty Hearing Board must review the Investigative Report containing all pertinent information regarding the incident in question prior to the Faculty Hearing

Board hearing. Relevant information supporting the violation(s) alleged may be offered in the form of written statements, documents, items, or oral information from the complainant, the respondent, and witnesses.

a.   <u>Call to Order</u>

A hearing will be called to order by the Faculty Hearing Board Chair. The Chair will orally explain the hearing process and will provide an opportunity for all parties to ask procedural questions prior to initial statements and the presentation of information.

The Chair of the Faculty Hearing Board will rule on matters of procedure and may preclude statements and questions that are redundant, irrelevant, or otherwise not allowed by the procedures of the College, as determined by the Chair. The Chair of the Faculty Hearing Board may also strike answers that provide such redundant, irrelevant, or impermissible information. Statements at the hearing need not be made or submitted under oath.

b.   <u>Summary by Investigators</u>

The Investigator(s) will provide a summary of the investigation. This summary should include a focus on the areas of agreement and disagreement in order to assist the Faculty Hearing Board in prioritizing areas of inquiry. The Faculty Hearing Board, complainant, or respondent may make inquiries of the Investigator(s) at this juncture, and there will be additional opportunity to ask questions of the Investigator(s) after the Faculty Hearing Board has heard from the complainant, the respondent, and any witnesses.

c.   <u>Brief Statement by Complainant</u>

The complainant may supplement the information provided to the Faculty Hearing Board with a brief statement. This is not intended to be a retelling of the event. The Faculty Hearing Board may pose questions to the complainant, including a written list of questions suggested by the respondent and forwarded to the Faculty Hearing Board in advance of the hearing.

d.   <u>Brief Statement by Respondent</u>

After the complainant is finished, the respondent will be given an opportunity to make a brief statement. This is not meant to be a retelling of the event. The Faculty Hearing Board may pose questions to the respondent, including a written list of questions suggested by the complainant and forwarded to the Faculty Hearing Board in advance of the hearing.

e.   <u>Witnesses</u>

The Faculty Hearing Board may hear from witnesses, including those allowed to present information, on behalf of the complainant and the respondent. Each witness

will be questioned by the Faculty Hearing Board, and, as appropriate, the complainant and the respondent.

f.   Questioning of Witnesses, Complainant, and Respondent

It is the responsibility of the Faculty Hearing Board to assure that the information necessary to make an informed decision is presented. The Faculty Hearing Board members may play an active role in questioning both parties and witnesses involved in the case. At times, the Faculty Hearing Board members may need to ask difficult or sensitive questions in order to understand areas of factual dispute or gain a full understanding of the context.

The complainant and the respondent may not directly question one another. As outlined above, the parties may submit questions to the Faculty Hearing Board in writing, which may be posed at the discretion of the hearing panel. Similarly, the Faculty Hearing Board members are under no obligation to allow either party to directly question witnesses, and the Faculty Hearing Board may require that questions to witnesses be submitted in writing.

Parties and other individuals who offer information at a hearing are expected to respond honestly, and to the best of their knowledge. The Faculty Hearing Board reserves the right to recall any party or witness for further questions and to seek additional information necessary to make a decision.

g.   Additional Questioning of Investigators

The Faculty Hearing Board, complainant, and respondent may then question the Investigator(s) again. As with all questioning, the Faculty Hearing Board Chair may preclude or limit questions that are redundant, irrelevant, or otherwise not allowed by the procedures of the College, as determined by the Chair. The Investigator(s) is not permitted to offer an opinion as to the ultimate issue.

h.   Complainant and Respondent Address Outstanding Issues

At the conclusion of the presentation of all witnesses, the complainant and respondent will each be given a brief final opportunity to address any outstanding issues of fact and submit additional written questions to the Chair. The Chair, in consultation with the Faculty Hearing Board will determine the appropriateness and relevance of the questions as well as whether any question is redundant or should have been presented earlier in the hearing.

i.   Deliberation

After all of the information has been presented, all parties will be dismissed and the hearing will be formally concluded.

The Faculty Hearing Board members will conduct their deliberations in private. The Faculty Hearing Board will normally complete their deliberations within three (3) days, but every attempt will be made to complete the deliberations promptly.

The Faculty Hearing Board will determine a respondent's responsibility by a preponderance of the evidence. This means that the Faculty Hearing Board will decide whether it is "more likely than not," based upon all of the relevant information, that the respondent is responsible for the alleged violation(s). The Faculty Hearing Board must reach a decision on responsibility by majority vote.

j.   Sanctions and Impact Statements

If the Faculty Hearing Board that finds a respondent responsible for a violation of this Policy, it may consider the impact statement of the complainant and statement of the respondent relevant to sanctioning, if submitted, and recommend appropriate sanctions that may include, but are not limited to, those set forth below. Sanctions may be issued individually, or a combination of sanctions may be imposed. Possible sanctions may include:

- *Educational Programs*

  Requirement that the respondent take part in a specified educational program on or off campus. The Faculty Hearing Board may recommend a sanction that requires respondent to participate in an online educational program that addresses particular issues.

- *Probation*

  The next violation is likely to result in Dismissal.

- *Physical Restrictions*

  A directive given to the respondent that does not permit him/her to be in specified locations on College Premises.

- *Suspension Without Pay*

- *Dismissal*

  Dismissal from the College. If the sanction recommended is dismissal or termination of appointment, the President shall inform the Board of Trustees for final action based upon the recommendation of the President.

k.   Outcome

The Faculty Hearing Board will communicate its determination of responsibility and, if applicable, recommended sanctions to the President (with a copy to the Vice President for Academic Affairs and the Title IX Coordinator). The determination will detail the findings of fact and the basis/rationale for the decision of the Faculty Hearing Board, making reference to the evidence that led to the finding. The President will have access to the record of the hearing, including the investigative report, other documentation, and the audio recording or transcript of the hearing. In rendering a final decision, the President may accept or modify the Faculty Hearing

Board's determination of responsibility and, if applicable, accept or modify the recommended sanctions. The President will communicate the final decision in writing, the findings of fact, decision, rationale for the decision, and sanctions (if any) to both parties (with a copy to Vice President for Academic Affairs and the Title IX Coordinator) usually within seven (7) days from the date the hearing is concluded, to the extent that is required federal and state law. The notification of each party should occur at or near the same time.

### F. Appeals

The point of an appeal is not to provide complainant and/or respondent with a new hearing nor is it intended to provide complainant and/or respondent with the opportunity to simply declare that the President's decision was wrong. The complainant and respondent may appeal the decision of the President based only upon the grounds outlined below with respect to the each of the violation(s) found to have occurred. The party filing the appeal is the Appellant. Appeals of hearing decisions must be submitted to the Executive Committee of the Board of Trustees ("Appeals Panel") in writing within ten (10) days of written notification of the President's decision. The imposition of sanctions remain in effect during the period of the appeal proceedings.

The opposing party will be notified that an appeal been filed and receive a copy of the appeal. The opposing party may submit a written response to the appeal within two (2) days of receiving the notice of the appeal. In some situations, both the complainant and the respondent may file an appeal. In this situation, the Appeals Panel will consider and review both appeals together.

The Appeals Panel may review all materials presented at the hearing, the recording or transcript of the hearing, the Faculty Hearing Board's determination of responsibility and (if applicable) recommended sanction(s), and the President's decision; and may consult with the Chair of the Faculty Hearing Board on questions of judicial procedure and with the President on questions of appropriateness of the sanction(s). The Appeals Panel standard of review will be based upon "substantial evidence" defined as follows: was there sufficient evidence to support the finding / action below.

Appeals shall be submitted based on the party's ability to demonstrate that one or more of the grounds listed below for appeal are meritorious:

- *Procedural Error*: The Appellant alleges that there was a deviation or change from the procedures outlined in the Sexual Misconduct Policy which adversely impacted the outcome of the matter. If the Appeals Panel determines that there was a procedural error which likely altered the outcome of the case, the matter will be remanded to the Faculty Hearing Board for a determination regarding the impact of the procedural error on the outcome of the complaint. The Faculty Hearing Board's determination on whether there was an impact on the outcome of the complaint will be conveyed to the President who will make a final decision. The President will notify complainant and respondent in writing of the final decision, with a copy to

the Appeals Panel, Faculty Hearing Board, Vice President for Academic Affairs, and Title IX Coordinator. All records will be forwarded to the Vice President for Academic Affairs with a copy to the Title IX Coordinator.

- *New Evidence*: The Appellant alleges that, subsequent to the issuing of the Faculty Hearing Board's decision, new evidence became available which would have impacted the outcome of the disciplinary complaint. The Appellant must: (i) present the new evidence; (ii) show why it was unavailable prior to the Faculty Hearing Board's decision; and (iii) show that the new evidence would have altered the outcome of the complaint. If the Appeals Panel determines that there is evidence that warrants a new hearing, it will remand the matter to the Faculty Hearing Board.

- *Severity of The Disciplinary Action*: The Appellant alleges that the disciplinary action issued by the President is unduly harsh or lenient. If the Appeals Panel determines that that disciplinary action was unduly harsh or lenient, it will remand the matter to the President for reconsideration. The decision of the President after reconsideration is final. The President will notify complainant and respondent in writing of the final decision, with a copy to the Appeals Panel, Faculty Hearing Board, Vice President for Academic Affairs, and Title IX Coordinator. All records will be forwarded to the Vice President for Academic Affairs with a copy to the Title IX Coordinator.

The foregoing are the only grounds for appeal.

The written appeal must specifically state the grounds under which the appeal has been filed. The appeal must set forth the information and evidence to support the appeal.

A written appeal decision will be rendered by the Chair of the Board of Trustees and provided to each party by either being mailed to the parties at their local addresses (or another address if a student has no local address) or emailed to the parties at the email addresses that the College has provided the students (or another email address a student has provided the College), ordinarily within thirty (30) days of receipt of the appeal. A copy of the appeal decision will be conveyed to the President, Faculty Hearing Board, Vice President for Academic Affairs, and Title IX Coordinator.

The outcome of the appeal is final. All records will be forwarded to the Vice President for Academic Affairs with a copy to the Title IX Coordinator.

### G. *Concerns about the Implementation of these Grievance Procedures*

The College has appointed a Title IX Coordinator at Union College, to oversee all aspects of the College's Title IX compliance efforts. An individual who believes that any aspect of this Policy has not been properly followed should contact the Title IX Coordinator, Melissa Kelley, at kelleym2@union.edu (518-388-6865). Retaliation against any person who files a complaint is prohibited.

### H. Integrity of Proceedings

These procedures are entirely administrative in nature and are not considered legal proceedings. As there will be an official recording or transcription of the hearing, neither party may make an audio or video recording of the proceedings. No computers, cell phones, or other electronic means of communication are allowed to be used during the hearing by the complainant, respondent, Advisors, or a witnesses.

At the discretion of the Faculty Hearing Board Chair, anyone disrupting the hearing may be removed.

### I. Records

The Vice President for Academic Affairs will retain records of all reports and complaints, regardless of whether the matter is resolved by means of Title IX assessment, informal resolution or formal resolution. Further questions about record retention should be directed to the Vice President for Academic Affairs.

# APPENDIX C
# RESOLUTION OF A COMPLAINT AGAINST AN EMPLOYEE

## XIII.   Appendix C: Resolution of a Complaint Against an Employee

As outlined in the Union College Sexual Misconduct Policy, an individual who wishes to make a report of sexual misconduct or other prohibited conduct is encouraged to make a report directly to the Title IX Coordinator or Campus Safety. Additionally, employees are encouraged to report such conduct to their immediate supervisor or directly to Human Resources. In every instance under this policy, the College, through the coordinated efforts of the Title IX Coordinator and the Title IX Team (typically, the Director of Campus Safety and a designee from Human Resources), will conduct an initial Title IX Assessment and will make an immediate assessment of imminent risk to the individual or the campus community and respond accordingly.

The adjudication/resolution process is intended to be prompt, fair and impartial and will provide for disciplinary action, as appropriate.  This process should be read in conjunction with the College's  Sexual Misconduct Policy, which also prohibits retaliation. As set forth in the Union College Sexual Misconduct Policy, sex discrimination and violence have no place at Union College and will not be tolerated. Sex discrimination and violence by or against any Union College community member violates the College's core values, including the College's commitment to providing a safe community and equal opportunity to all.  Sex and gender based discrimination, harassment and violence is prohibited by Union College policy and can constitute violations of state and/or federal law.

### A.  Informal Resolution

Informal Resolution is designed to assist the parties in reaching a mutually agreeable resolution. An individual wishing to employ an informal resolution of a complaint will meet with the Title IX Coordinator, Human Resources and/or other appropriate administrator who will explain the process and options available.

The Title IX Coordinator, Human Resources or administrator may seek to resolve certain sexual misconduct complaints through an informal process involving both the complainant and accused. (For example, a complainant and respondent may agree with the title IX Team that education and training for the respondent are an appropriate and sufficient conclusion). If, based on the information provided about the incident, the Title IX Team believes such a resolution is possible and appropriate, they will speak with the complainant. If the complainant agrees, the team will then speak with the respondent. If both the complainant and respondent are satisfied with a proposed resolution and the offices believes the resolution satisfies the College's obligation to provide a safe and nondiscriminatory environment for all, the resolution will be implemented, the disciplinary process will be concluded and the matter will be closed. If these efforts are unsuccessful, the disciplinary process will continue. Before starting these discussions, the Title IX Coordinator will notify the complainant and respondent that each has the right to end the informal process at any time. **The College will not use informal resolution for cases involving allegations of sexual assault.**

The Title IX Coordinator will maintain records including any forms, records of all reports, and conduct referred for informal resolution. Informal resolution will typically be completed within **thirty (30) days** of the initial report.

### B.   Formal Resolution

A person who has experienced an incident of sexual misconduct, including sexual harassment, sex/gender discrimination, sexual assault, relationship violence, stalking, sexual exploitation and any other sexual misconduct committed by a Union College employee, may file a complaint against the person responsible for that conduct. Complaints should be filed with the Title IX Coordinator:

**Dr. Melissa Kelley, Title IX Coordinator**
**(518) 388-6865**
**kelleym2@union.edu**
**403E Reamer Campus Center**

### 1.   Filing a Complaint

The individual bringing the allegation is called the complainant. The complainant will be asked to submit three forms: the Complaint Form, Complainant's Statement, and a Limited Disclosure/Non-Retaliation Acknowledgement to initiate the disciplinary complaint. The complainant's forms should be signed, dated, and submitted to the Title IX Coordinator.

There is no time limit for the submission of a complaint alleging sexual misconduct. A complaint may be filed at any time as long as the respondent remains employed at the College. Please note that the College only has jurisdiction over employees when they are employed.

The College reserves the right to initiate resolution of a complaint immediately to protect the interests and safety of the College community.

In instances where a complaint is received regarding a respondent no longer employed by Union College, guidance about filing an external complaint will be provided to the complainant.

#### a.   Complaint Form and Complainant's Statement

For a complainant to file a complaint against an employee, the complainant must submit the following two documents.

The Complaint Form is a document that will contain basic information about the complaint made against the respondent, such as the time, date, location, and brief description of the allegations underlying the complaint. This Complaint Form must contain sufficient detail to permit a reasonable person to understand the allegations being brought forward and to be able to adequately respond. The respondent will be given access to the Complaint Form prior to filing a written response statement.

The Complainant's Statement is a written statement detailing the allegations of the sexual misconduct. This statement is the opportunity for the complainant to describe the allegations against the respondent. The statement should communicate the complainant's full account of the event and its context, as well as the complainant's reflections. To facilitate the process, the complainant should follow these guidelines:

- **Describe the event(s) in full detail**. Relate in full the facts of the incident as you recall them. Take care to distinguish between what you saw, heard, or experienced first-hand from what you may have learned later from others.

- **Describe the context**. It is important for you to give your perception of the respondent's conduct and the context in which the alleged incident occurred, including its location, and any witnesses to it.

- **Reflect on the event(s)**. It is helpful for you to provide any conclusions you have drawn about the incident, stating clearly why you believe the respondent's actions may have violated College policy or the Code of Conduct.

The Complainant's Statement should include the name of the respondent, the date and location of the alleged sexual misconduct and the details of the alleged misconduct. This statement should provide as much detail as possible about the facts surrounding the alleged sexual misconduct.

A descriptive list of all sources of information (e.g., witnesses, correspondence, records, etc.) should be attached to the Complainant's Statement. This list should include information which the complainant believes should be considered in deciding the outcome, along with a brief explanation of why this information would be relevant and helpful to the process. The sources and/or location of this supporting information should be identified. Complainants are advised to not attempt to obtain this information themselves. The Title IX Coordinator or assigned Investigator(s) will solicit any relevant statements or documents referenced through this process.

The Complainant's Statement is one of the most important documents to be considered in the sexual misconduct Complaint Process. Once submitted, the Complainant's Statement may not be amended, but it may be supplemented through interviews with the title IX Coordinator, Investigator(s), or Human Resources. The statement must be prepared by the complainant.

It is unacceptable for a complainant to submit a statement written by others, including parents, support persons, or attorneys. However, complainants are encouraged to share a draft of the statement with a support person who is well-positioned to discuss, among other matters, the statement's style, organization, length, and clarity, while also anticipating questions it may raise for the fact-

finder. The complainant will be required to sign a statement verifying that he/she authored the Complainant's Statement.

The respondent will not be allowed to see the Complainant's Statement until after the respondent has filed their statement in response to the original Complaint Form. Once the respondent has submitted their statement, they will be given a copy of the Complainant's Statement. The complainant will also be given a copy of the Respondent's Statement.

b.  Limited Disclosure/ Non-Retaliation Acknowledgment

The complainant will be required to sign a Limited Disclosure/Non-Retaliation Acknowledgment, agreeing to limit disclosure of  or discussion of anything relating to the disciplinary complaint with anyone other than those involved with this process. The complainant will still be able to discuss the facts underlying the subject of the disciplinary complaint with attorneys, counselors, clergy, physicians, other therapeutic professionals and family. The complainant should refrain from discussing the complaint itself and/or the process with anyone affiliated with Union College. This is to preserve the integrity of the investigative process and also to prevent allegations of retaliation. Through  this Acknowledgment, the complainant also agrees to refrain from any retaliatory conduct against the respondent or any witnesses in the matter, as addressed in the Union College Sexual Misconduct Policy and may be responsible for any retaliation by persons affiliated with the complainant (i.e. a friend or family member).

*2.  Administrative Complaint*

Union College may independently initiate a disciplinary complaint against an employee under this policy pursuant to a complaint called an "Administrative Complaint." In this type of complaint, the College will act as the complainant in the adjudication of a sexual misconduct complaint against an employee. Such complaints will proceed under the processes outlined in this policy and may result in disciplinary action.

*3.  Responding To a Complaint*

The employee against whom the complaint is brought is called the respondent. The respondent shall be given written notification when a complaint has been filed against him or her.

a.  Initial Meeting/ Limited Disclosure/Non-Retaliation Acknowledgment

Within **five (5) days** of receiving notice of the complaint, the respondent must meet with the Title IX Team.

At this meeting, the Title IX Team will provide the respondent with a copy of the Complaint Form, discuss the nature of the Complaint, explain the rights and responsibilities of the respondent, explain the prohibition against retaliation,

explain the complaint process and give the respondent a copy of the relevant policies. Prior to reviewing the Complaint Form, the respondent will be required to sign a Limited Disclosure/Non-Retaliation Acknowledgment, agreeing to limit disclosure of or discussion of anything relating to the disciplinary complaint with anyone other than those involved with this process. Through this Acknowledgment, the respondent also agrees to refrain from any retaliatory conduct against the complainant or any witnesses in the matter, as addressed in the Union College Sexual Misconduct Policy and may be responsible for any retaliation by persons affiliated with the respondent (i.e. a friend or family member). Refusal/failure by the respondent to meet and cooperate with the Title IX Team or Investigator(s) regarding this matter or to sign the Limited Disclosure/Non-Retaliation Acknowledgment, as determined by the Vice President for Human Resources, may result in either or both: (1) an automatic suspension or separation of the respondent from the College and/or (2) the resolution of the complaint without input from the respondent.

b.   Pre-Fact-Finding Resolution of Complaint/Acceptance

After meeting with the Title IX team and reviewing the Complaint Form, the respondent has the right to end the process by signing a document accepting responsibility for the conduct alleged in the Complaint Form. If the respondent accepts responsibility for the conduct alleged in the Complaint Form, the process would not proceed further. Instead, the matter would be referred to Human Resources or appropriate administrator to decide the appropriate disciplinary action against the respondent.

Human Resources may take the respondent's acceptance of responsibility into consideration in determining the appropriate response. However, once the respondent accepts responsibility, such acceptance cannot be withdrawn. A written finding of the acceptance of responsibility and the resulting disciplinary action will be issued by Human Resources, which will become part of the respondent's personnel records. If the respondent does not wish to participate in this resolution process, then he/she will need to prepare a Respondent's Statement as noted below. The respondent must decide whether he/she would like to utilize this resolution process before expiration of the **seven (7) days** for submitting the Respondent's Statement.

c.   Respondent's Statement

The respondent will be asked to provide a written response to the information contained in the Complaint Form. The Respondent's Statement must be submitted to the Title IX Coordinator within **seven (7) days** after the meeting between the respondent and Title IX team. The Respondent's Statement should contain the respondent's full recollection of the alleged incident. This statement is the respondent's opportunity to respond to the allegations made by the complainant. The statement should communicate the respondent's recollection of the event and its context, as well as the respondent's reflections by following these guidelines:

- **Describe the event(s) in full detail**. Relate in full the facts of the incident as you recall them. Take care to distinguish between what you saw, heard, or experienced first-hand from what you may have learned later from others.

- **Describe the context**. It is important for you to give your perception of the conduct and the context in which the alleged incident occurred, including its location, and any witnesses to it.

- **Reflect on the event(s)**. It is helpful for you to provide any conclusions you have drawn about the incident, stating clearly why you believe your actions have not violated College policy or the Code of Conduct.

A descriptive list of all sources of information (e.g., witnesses, correspondence, records, etc.) should be attached to the Respondent's Statement. That list should include information which the respondent believes should be considered in deciding the outcome, along with a brief explanation of why this information would be relevant and helpful to the process. The sources and/or location of this supporting information should be identified. Respondents are advised to not attempt to obtain the information themselves. The College will solicit relevant statements or documents referenced through this process.

The Respondent's Statement will be one of the most important documents to be considered in the Process. Once submitted, the Respondent's Statement may not be amended, but it may be supplemented through interviews with the Investigator(s) or Title IX Team. The statement must be prepared by the respondent. It is unacceptable for a respondent to submit a statement written by others, including parents, support persons, or attorneys. However, the respondent is encouraged to share a draft of the statement with a support person who is well positioned to discuss, among other matters, the statement's style, organization, length, and clarity, while also anticipating questions it may raise for the fact-finder. The respondent will be required to sign a statement verifying that they authored the Respondent's Statement. Once the respondent has submitted their statement, the respondent will be given a copy of the Complainant's Statement. The complainant will also be given a copy of the Respondent's Statement.

## C. *Fact Finding Investigation*

After both parties have submitted their statements, the Title IX team may choose to initiate a Fact-Finding Investigation, utilizing the College's neutral investigators. It is at the discretion of the Title IX team to initiate such process.

Complainant and Respondent (and their Advisors) in an investigation will have access to any investigative reports, witness accounts, or other documents produced during an investigation. The Title IX Coordinator and/or Human Resources designee may redact information that is irrelevant, more prejudicial than probative, or immaterial. They may also redact statements of personal opinion, rather than direct observations or reasonable

inferences from the facts, and statements as to general reputation for any character trait, including honesty. Neither the Complainant nor the Respondent shall have the right to review redactions from the Investigative Report.

### D. Resolution of Formal Complaint

After completion of the fact-finding investigation, both the Complainant and Respondent will be provided the opportunity to review the final investigative report. This document review will take place within the Title IX Coordinator's Office – the documents and any evidence, either originals or copies, will not permitted to leave the office. The Complainant and the Respondent may bring their Advisor to this review.

Any requested changes or concerns must be submitted in writing to the Title IX Coordinator by the respective parties within two (2) days of reviewing the document(s). The Title IX Coordinator will notify both parties should there be any changes within two (2) days of receipt of written notification from either party. The Title IX Coordinator will provide a copy of the final investigative report to the Title IX Team.

The Title IX Team will evaluate the results of the investigation and make a decision based upon the preponderance of evidence standard. The Title IX Team is tasked with determining a finding of Responsible or Not Responsible. This finding is based on the Respondent and Complainant Statements, witness accounts, any evidence or materials presented and the investigative report. Additionally, the Title IX Team, in making its finding, has the right to speak with the Investigators. If a finding of Responsible is determined, the Title IX Team will determine appropriate disciplinary measures. The Title IX Team will meet with the complainant and respondent separately to share the determination of responsibility.

Upon a finding of proscribed conduct, disciplinary measures, including but not limited to those listed below, may be imposed. The Title IX Team will determine appropriate disciplinary measures in consultation with Human Resources.

- *Educational Programs*

Requirement that the respondent take part in a required educational program on or off campus. The Title IX Team may require respondent to participate in an online educational program that addresses particular issues.

- *Suspension/Separation*

Permanent or temporary separation from the College.

- *Interim Restrictions*

Imposition on an interim basis of any restrictions.

- *Loss of Privileges*

Denial of specified privileges for a designated period of time.

- *Physical Restrictions*

A directive given to the respondent that does not permit him/her/them to be in specified locations on College Premises.

More than one of the sanctions listed above may be imposed for any single violation.

### E.  Outcome Letter

The outcome of the resolution will be final and communicated to the complainant and respondent in writing, usually within **seven (7) days** from the date the assessment is concluded. The notification of each party should occur at or near the same time.

Both parties have the right to be informed of the findings of fact, decision, rationale for the decision, and sanction (if any), in accordance with applicable law.

The imposition of disciplinary measures will take effect immediately and will not be stayed pending the resolution of the appeal.

### F.  Appeals

Both the complainant and respondent are entitled to appeal the decision issued through the Sexual Misconduct Adjudication Process. The complainant and respondent are both entitled to only one appeal. The person filing the appeal is called the appellant. An appeal must be filed, in writing, and provided to the Title IX Coordinator using the Notice of Appeal form within seven (7) days of the notice of decision. The Notice of Appeal form can be obtained by emailing: kelleym2@union.edu or it may be accessed from http://www.union.edu/titleix.

The Notice of Appeal should be submitted to:

**Dr. Melissa Kelley**
**Title IX Coordinator**
**Reamer 403E**
**Kelleym2@union.edu**

The point of an appeal is not to provide complainant and/or respondent with a new adjudication process nor is it intended to provide complainant and/or respondent with the opportunity to simply declare that the decision was wrong. The complainant and respondent may appeal the decision based only upon the grounds outlined below with respect to the each of the violation(s) found to have occurred. Appeals are considered by the appropriate Vice President or Senior Staff Member in consultation with the Title IX Coordinator. The imposition of sanctions remain in effect during the period of the appeal proceedings. The opposing party will be notified that an appeal has been filed and will receive a copy of the Notice of Appeal. The opposing party has two (2) days to respond to the appeal in writing. This response should be submitted to the Title IX Coordinator and will be reviewed by the appellate officer. In some situations, both the complainant and the

respondent may file an appeal. In this situation, the appellant officer will consider and review both appeals together.

In considering the appeal, the appellate officer will be given the Notice of Appeal form, any and all documents including but not limited to the statements from the complainant and respondent, the investigative report, and any other documentation provided to the Title IX Team at the time they made their decision. The appellate officer will receive the outcome letter as well as the sanction and rationale. Additionally, the appellate officer will receive any response received from the opposing party by the Title IX Coordinator within the allotted two (2) day timeframe. The appellant officer may consult with the Title IX Team.

Appeals shall be submitted based on the one's ability to demonstrate that one or more of the grounds listed below for appeal are meritorious:

- *Procedural Error*: The Appellant alleges that there was a deviation or change from the procedures outlined in the Sexual Misconduct Adjudication Process and that deviation had an adverse impact on the outcome of the complaint against the appellant. If the appellate officer determines that there was a procedural error which would have altered the outcome of the case, the appeal will be submitted to the original decision making body for a determination regarding the impact of the procedural error on the outcome of the complaint.

- *New Information*: The Appellant alleges that, subsequent to the issuing of the decision, new information became available which would have impacted the outcome of the disciplinary complaint. The Appellant must: (i) present the new information; (ii) show why it was unavailable prior to the decision; and (iii) show that the new information would have altered the outcome of the complaint. If the appellate officer determines that there is new information that meets these three (3) requirements, the appeal will be submitted to the original administrative team for review in light of new information. An additional investigation of the new information can be requested.

- *Severity of The Disciplinary Action*: The Appellant alleges that the disciplinary action issued by Human Resources is unduly harsh or lenient. If the appellate officer determines that that disciplinary action was unduly harsh or lenient, it will remand the matter to the appropriate administrator for reconsideration. The decision of the Vice President of Human Resources after reconsideration is final.

The foregoing are the only grounds for appeal.

The appeals process will usually be completed within **fifteen (15) days** of filing the Notice of Appeal. In the event that the appeals process exceeds the fifteen (15) day time frame, the Title IX Coordinator will advise all parties in writing of the delay and offer an explanation.

A written decision will be rendered by the appropriate Vice President or designee and will be provided to each party. The outcome of the appeal is final.

### G. Concerns about the Implementation of these Grievance Procedures

The College has appointed a Title IX Coordinator, Melissa Kelley, to oversee all aspects of the College's Title IX compliance efforts. An individual who believes that any aspect of this policy has not been properly followed should contact the Title IX Coordinator at (518-388-6865 or kelleym2@union.edu). Retaliation against any person who files a complaint of alleged discrimination is prohibited.

### H. Integrity of Proceedings

These procedures are entirely administrative in nature and are not considered legal proceedings.

### I. Records

The Title IX Coordinator and Human Resources will retain records of all reports and complaints, regardless of whether the matter is resolved by means of Title IX assessment, informal, or formal resolution.

Affirmative findings of responsibility in matters resolved through formal resolution are part of an employee's personnel file. Further questions about record retention should be directed to the Human Resources Office.